# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SRC LIQUIDATION COMPANY, *et al.*,<br><br>    Debtors. | Bankruptcy Case No. 15-10541 (BLS)<br><br><br>On Appeal from the U.S. Bankruptcy Court for the District of Delaware |
| EISNERAMPER LLP, not in its individual capacity but as Trustee of the SRC Liquidating GUC Trust,<br><br>    Appellant,<br><br>    v.<br><br>ROBERT M. GINNAN; JOSEPH P. MORGAN, JR.; ROY W. BEGLEY, JR.; F. DAVID CLARKE, III; JOHN Q. SHERMAN, II; JULIE D. KLAPSTEIN; JOHN J. SCHIFF, JR.; and R. ERIC MCCARTHEY,<br><br>    Appellees. | Case No. 1:16-cv-00119 (LPS) |

## APPELLEES' BRIEF IN OPPOSITION TO APPEAL FROM THE ORDER DISMISSING THE AMENDED ADVERSARY COMPLAINT

July 12, 2016

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (DE No. 3578)
David J. Teklits (DE No. 3221)
Matthew B. Harvey (DE No. 5186)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 658-9200

rdehney@mnat.com
dteklits@mnat.com
mharvey@mnat.com

*Counsel for Appellees*

**MORRISON & FOERSTER LLP**
James Michael Peck*
Carl H. Loewenson, Jr.*
Robert J. Baehr*
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000
Fax: (212) 468-7900
jpeck@mofo.com
cloewenson@mofo.com
rbaehr@mofo.com

James M. Koukios*
Lauren A. Navarro*
2000 Pennsylvania Avenue NW
Suite 6000
Washington, D.C. 20006
Tel: (202) 887-1500
jkoukios@mofo.com
lnavarro@mofo.com

*Counsel for Roy W Begley, Jr., F. David Clarke, III, John Q. Sherman, II, Julie D. Klapstein, John J. Schiff, Jr., and R. Eric McCarthey*

**JONES DAY**
Jeffrey J. Jones*
Charles M. Oellermann*
Marjorie P. Duffy*
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215
Tel: (614) 469-3939
jjjones@jonesday.com
coellermann@jonesday.com
mpduffy@jonesday.com

*Counsel for Robert M. Ginnan*

**SQUIRE PATTON BOGGS (US) LLP**
Joseph C. Weinstein*
Sean L. McGrane*
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
joe.weinstein@squirepb.com
sean.mcgrane@squirepb.com

*Counsel for Joseph P. Morgan, Jr.*

---

* *Pro hac* admission pending.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES PRESENTED ....................................................1

STANDARD OF REVIEW ................................................................................1

STATEMENT OF THE CASE ..........................................................................4

I.    PROCEDURAL HISTORY ...................................................................4

II.   BACKGROUND ...................................................................................6

    A.    Standard Register's History of Success—and Decline. .....................6

    B.    Standard Register Responds to These Challenges by
    Restructuring and Pursuing a Strategic Combination. ......................7

    C.    Standard Register's Management and Expert Advisors Present
    Projections and Other Analyses to the Board in Connection
    with the WorkflowOne Acquisition. ..................................................9

    D.    The Market Reacts Favorably to the WorkflowOne Acquisition. ......13

    E.    The Board Approves Bonuses Tied to the Performance of the
    Combined Company. ..........................................................................14

    F.    Standard Register Files for Chapter 11............................................15

    G.    The Bankruptcy Court Dismisses the Amended Complaint..............15

SUMMARY OF ARGUMENT ..........................................................................19

ARGUMENT.....................................................................................................20

I.    THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S
    DISMISSAL WITH PREJUDICE OF THE FIDUCIARY DUTY
    CLAIMS (FIRST COUNT). ....................................................................20

    A.    The Bankruptcy Court Correctly Concluded that, Under Ohio
    Law, Plaintiffs Must Plead Facts, Which, if Proved, Would
    Overcome the Business Judgment Rule. ..........................................21

    B.    The Bankruptcy Court Correctly Concluded That the Amended
    Complaint Alleges No Facts that Would Establish a Breach of
    the Duty of Care................................................................................26

    C.    The Bankruptcy Court Correctly Concluded that the Amended
    Complaint Pleads No Facts that Would Establish a Breach of
    the Duty of Loyalty. .........................................................................34

# TABLE OF CONTENTS
### (continued)

**Page**

1.   The Bankruptcy Court Correctly Found that the Amended Complaint Pleads No Facts to Plausibly Establish Entrenchment...........................................................34

2.   The Bankruptcy Court Correctly Found that the Amended Complaint Pleads No Facts to Plausibly Demonstrate Disloyal Conduct. .............................................39

D.   The Bankruptcy Court Correctly Concluded that the Amended Complaint Pleads No Facts to Establish Proximate Cause of Any Injury. .....................................................................43

E.   This Court Should Affirm the Bankruptcy Court's Dismissal of the First Count with Prejudice..........................................................44

II.   THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DISMISSAL OF THE FRAUDULENT TRANSFER CLAIMS (SECOND AND THIRD COUNTS)..........................................................49

A.   The Claim for Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B) Was Correctly Dismissed. .......................................49

1.   Standard Register Received Reasonably Equivalent Value in Exchange for the Transaction Bonuses. ...................51

2.   The Allegations that the Company Was Insolvent at the Time of the Acquisition Are Implausible. ..............................53

3.   The Amended Complaint Fails to Allege Any Other Basis for the Constructive Fraudulent Transfer Claim............56

CONCLUSION ................................................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. City of Massillon*,
  134 Ohio St. 3d 380 (2012)...........................................................................32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................. 2, 3, 26, 39, 40

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................2, 26, 38, 39

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
  891 A.2d 150 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006) ............4, 37, 38

*Bodkin v. Mercantile Stores Co.*,
  No. 13770, 1996 WL 652763 (Del. Ch. Nov. 1, 1996)...............................37, 38

*Brosz v. Fishman*,
  99 F. Supp. 3d 776 (S.D. Ohio 2015).......................................................21, 22

*Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
  27 A.3d 531 (Del. 2011) .................................................................................38

*Coventry v. U.S. Steel Corp.*,
  856 F.2d 514 (3d Cir. 1988)............................................................................48

*DCG & T ex rel. Battaglia*,
  68 F. Supp. 3d 579 (E.D. Va. 2014) ...............................................................33

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982)........................................................................................21

*F.D.I.C. v. Faigin*,
  No. CV 12-03448 DDP(CWx), 2013 WL 3389490 (C.D. Cal. July 8,
  2013) ...............................................................................................................32

*Foman v. Davis*,
  371 U.S. 178 (1962)....................................................................................4, 45

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...............................................................2

*Fraser v. Nationwide Mut. Ins. Co.*,
  352 F.3d 107 (3d Cir. 2004) ...........................................................4, 45

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) .................................................................37

*Granada Invs., Inc. v. DWG Corp.*,
  823 F. Supp. 448 (N.D. Ohio 1993) .................................................23

*Gries Sports Enters., Inc. v. Cleveland Browns Football Co.*,
  26 Ohio St. 3d 15 (1986)..................................................................22

*In re Adelphia Commc'ns Corp.*,
  No. 02-41729REG, 2004 WL 1634538 (Bankr. S.D.N.Y. June 22, 2004)..30, 31

*In re Amcast Indus. Corp.*,
  365 B.R. 91 (Bankr. S.D. Ohio 2007) ...............................................23

*In re Aphton Corp.*,
  423 B.R. 76 (Bankr. D. Del. 2010)....................................................50

*In re Celera Corp. S'holder Litig.*,
  No. 6304-VCP, 2012 WL 1020471 (Del. Ch. Mar. 23, 2012),
  *aff'd in part*, *rev'd in part*, 59 A.3d 418 (Del. 2012) ........................33

*In re Circle Y*,
  354 B.R. 349 (Bankr. D. Del. 2006).............................................49, 50

*In re Crucible Materials Corp.*,
  No. 09-11582(MFW), 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) .......55

*In re Duke & King Acquisition Corp.*,
  508 B.R. 107 (Bankr. D. Minn. 2014)................................................51

*In re Fedders N. Am., Inc.*,
  405 B.R. 527 (Bankr. D. Del. 2009)........................................37, 38, 53

*In re Gas Natural, Inc.*,
  No. 1:13 CV 02805, 2015 WL 3557207 (N.D. Ohio June 4, 2015)............25, 26

*In re Gavin*,
   No. 08-60881, 2011 Bankr. LEXIS 2613 (Bankr. S.D. Ohio July 11,
   2011) ...........................................................................................................57

*In re Global Link*,
   327 B.R. 711 (Bankr. D. Del. 2005).........................................................50, 51

*In re Healthco Int'l, Inc*,
   195 B.R. 971 (Bankr. D. Mass. 1996) ...........................................................28

*In re Iridium Operating LLC*,
   373 B.R. 283 (Bankr. S.D.N.Y. 2007)............................................................55

*In re Jevic Holding Corp.*,
   No. 08-11006 (BLS), 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) .......28

*In re Keithley Instruments, Inc.*,
   599 F. Supp. 2d 908 (N.D. Ohio 2009) ..........................................................21

*In re Key3Media Grp., Inc.*,
   336 B.R. 87 (Bankr. D. Del. 2005),
   *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006) ..........31

*In re LandAmerica Fin. Grp., Inc.*,
   470 B.R. 759 (Bankr. E.D. Va. 2012) .......................................................32, 33

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002)...........................................................................6

*In re Optim Energy, LLC*,
   527 B.R. 169 (D. Del. 2015) .............................................................................2

*In re The Goodyear Tire & Rubber Co. Deriv. Litig.*,
   No. 5:03CV2180, 2007 WL 43557 (N.D. Ohio Jan. 5, 2007)....................passim

*In re Toys "R" Us, Inc. S'holder Litig.*,
   877 A.2d 975 (Del. Ch. 2005)..................................................................37, 41

*In re Ultimate Escapes Holdings, LLC*,
   No. 15-241-RGA, 2016 WL 743371 (D. Del. Feb. 23, 2016).........................23

*Kademian v. Marger*,
   2014 Ohio 4408 (Ohio Ct. App. 2014)...........................................................43

*Koos v. Cent. Ohio Cellular*,
    94 Ohio App. 3d 579 (Ohio Ct. App. 1994) .................................. 21,  27, 36, 42

*La. Mun. Police Emps.' Ret. Sys. v. Crawford*, 918 A.2d 1172  (Del. Ch.
    2007) .............................................................................................22

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993)...........................................................45

*Miramar Firefighters Pension Fund v. AboveNet, Inc.*,
    No. 7376-VCN, 2013 WL 4033905 (Del. Ch. July 31, 2013).............. 27, 30, 31

*Monday v. Meyer*, No. 1:10-cv-1838,
    2011 WL 5974664 (N.D. Ohio Nov. 29, 2011) ...............................22

*Moody v. Sec. Pac. Bus. Credit, Inc.*
    971 F.2d 1056 (3d Cir. 1992).......................................................28

*NCS Healthcare, Inc. v. Candlewood Partners, LLC*,
    160 Ohio App. 3d 421 (Ohio Ct. App. 2005) ...........................................25, 43

*NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*,
    No. 1:11-cv-451, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011)...............25, 26

*Radol v. Thomas*,
    772 F.2d 244 (6th Cir. 1985)........................................................ 21, 22, 23, 26

*Raul v. Rynd*,
    929 F. Supp. 2d 333 (D. Del. 2013) ...............................................32

*Ret. Sys. v. Crawford*,
    918 A.2d 1172 (Del. Ch. 2007) .....................................................23

*Smith v. Schwarzenegger*,
    393 F. App'x 518 (9th Cir. 2010)...................................................48

*Stepak v. Schey*,
    51 Ohio St. 3d 8 (1990)................................................................23

*United States v. Berkowitz*,
    927 F.2d 1376 (7th Cir. 1991).......................................................40

*Zazzali v. Hirschler Fleischer, P.C.*,
  482 B.R. 495 (D. Del. 2012) ............................................................................50

**STATUTES, RULES, AND REGULATIONS**

11 U.S.C.
  § 548(a)(1)(A)..................................................................................................49
  § 548(a)(1)(B).................................................................................... 49, 56, 57
  § 548(a)(1)(B)(ii) ............................................................................................57

Del. Ch. Ct. Rule
  23.1.............................................................................................................37, 38

Fed. R. Civ. Proc.
  9(b) ....................................................................................................................3
  12........................................................................................................................3
  12(b)(6).................................................................................................. 2, 37, 38

Ohio Rev. Code
  § 1701.59 .........................................................................................................23
  § 1701.59(C) ..............................................................................................24, 34
  § 1701.59(D)(1) .........................................................................................24, 25
  § 1701.59(D)(2) ................................................................................... 24, 31, 34
  § 1701.59(E) ..............................................................................................24, 25
  § 1701.60 .........................................................................................................36

**OTHER AUTHORITIES**

Deborah Cahalane, *1986 Ohio Corporation Amendments: Expanding the
  Scope of Director Immunity*, 56 U. Cin. L. Rev. 663 (1987)) ..........................23

Joseph P. Morgan, Jr. and Robert M. Ginnan ("Officer Defendants") and Roy W. Begley, Jr., F. David Clarke, III, Julie D. Klapstein, R. Eric McCarthey, John J. Schiff, Jr., and John Q. Sherman, II ("Director Defendants") (collectively, "Defendants") submit this brief in opposition to the appeal of the Bankruptcy Court's order dismissing the Amended Adversary Complaint ("Amended Complaint"). Because the Amended Complaint fails to state a claim, this Court should affirm.

## STATEMENT OF THE ISSUES PRESENTED

(1)  Did the Bankruptcy Court err in ruling that the Amended Complaint fails to plead facts to plausibly establish breaches of the duties of care and loyalty?

(2)  Did the Bankruptcy Court err in ruling that the Amended Complaint fails to plead facts to plausibly establish the proximate cause of damages?

(3)  Did the Bankruptcy Court abuse its discretion when it dismissed with prejudice the first count?

(4)  Did the Bankruptcy Court err in ruling that the Amended Complaint fails to plead facts to plausibly establish that Standard Register was insolvent and did not receive reasonably equivalent value when it paid transaction bonuses to the Officer Defendants?

## STANDARD OF REVIEW

The Bankruptcy Court dismissed the Amended Complaint for failure to state

a claim under Rule 12(b)(6).  (A295.)[1]  Whether a party sufficiently states a claim

is a matter of law, over which this Court exercises *de novo* review.  *In re Optim*

*Energy, LLC*, 527 B.R. 169, 173 (D. Del. 2015) (Stark, J.).

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in a

plaintiff's complaint.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), the Court must accept as true only the complaint's well-

pleaded factual allegations.  *Id.*  Mere labels, conclusions, or formulaic recitations

of the elements of a cause of action are insufficient to state an actionable claim.  *Id.*

This inquiry calls for a two-step analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d

203, 210 (3d Cir. 2009).   First, the court should separate the factual and legal

elements of a claim, accepting well-pleaded facts and disregarding legal

conclusions.  *Id.* at 210–11.  Second, the court should "determine whether the facts

alleged in the complaint are sufficient to show that the plaintiff has a 'plausible

claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

A claim is plausible only if the complaint contains sufficient factual content

to "allow[] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The plausibility standard is

---

[1]  All citations to "D.I." refer to docket entries in proceeding number 16-cv-00119(LPS) before the District Court.  Citations to "A__" refer to Appellant's Appendix (D.I. 16).  Citations to "SA__" refer to Appellees' Supplemental Appendix (filed herewith).

2

not met when a complaint merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  Moreover, where a plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Courts routinely dismiss such deficient complaints.  *See, e.g.*, *In re The Goodyear Tire & Rubber Co. Deriv. Litig.*, No. 5:03CV2180, 2007 WL 43557, at *9 (N.D. Ohio Jan. 5, 2007) (dismissing breach of fiduciary duty allegations against directors of Ohio corporation that merely repeated statutory language in the negative and were "wholly unsupported by facts").

Courts sometimes relax the heightened pleading standard under Federal Rule of Civil Procedure 9(b) when "bankruptcy trustees bringing claims of fraud on behalf of the debtor and its creditors" have not been afforded any discovery prior to filing a complaint.  (*See, e.g.*, D.I. 15 (Appellant's Br.) 22–23 (citing cases).)  The relaxed pleading standard does ***not*** apply to non-fraud claims, such as the Amended Complaint's breach of fiduciary duty claim and, in any event, there is no "relaxed Rule 8" standard that would apply to ***any*** of the Amended Complaint's claims.[2]  All claims—whether brought by a bankruptcy trustee or not—are subject,

---

[2] Nor would the Plaintiff's Rule 9(b) cases apply here under any scenario because, as described below, Plaintiff took extensive discovery in this case.  As the

at a minimum, to the *Twombly–Iqbal* standard.  Contrary to Plaintiff's contention, applying that standard to a bankruptcy trustee's claims does not create a "heightened pleading standard."

A court may dismiss a claim with prejudice where amendment would be futile.  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004).  Whether to grant or deny an opportunity to replead falls squarely within the discretion of the court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## STATEMENT OF THE CASE

## I.    PROCEDURAL HISTORY

In May 2015, the Bankruptcy Court granted the Official Committee of Unsecured Creditors in the underlying chapter 11 cases (the "Committee") standing to pursue causes of action on behalf of the estates of The Standard Register Company and its various subsidiaries ("Standard Register").  On June 8, 2015, the Committee filed an adversary proceeding against the Officer and Director Defendants and certain secured lenders, including Silver Point Capital L.P. and four of its affiliates (collectively, "Silver Point").  (*See* A1.)

On August 4, 2015, the Trustee, which had taken the place of the Committee following its settlement with Silver Point, filed the Amended Complaint against

---

Bankruptcy Court noted, the Plaintiff here is "different" because "[y]ou have more [discovery] than a trustee would typically have."  (A277, 70:17; A284, 77:13.)

the Officer and Director Defendants.[3]  (*See* A58.)  The Officer Defendants, Robert M. Ginnan and Joseph P. Morgan, Jr., were the Chief Financial Officer and Chief Executive Officer of Standard Register, respectively.  (A61 ¶ 11; A62 ¶ 18.)  The six Director Defendants were all independent directors of Standard Register when its Board decided to approve a merger with WorkflowOne, LLC.  (*See* A61– A62 ¶¶ 12–17.)  That decision is the focus of this litigation.

The Bankruptcy Court heard oral argument on Defendants' Motion to Dismiss the Amended Complaint on February 8, 2016.  (A208.)  At the end of the hearing, the Bankruptcy Court dismissed the Amended Complaint's breach-of-fiduciary duty claim (first count) with prejudice and fraudulent transfer claims (second through fourth counts) without prejudice.  Rather than seeking to amend the second through fourth counts, Plaintiff noticed the instant appeal on March 1, 2016.  The Bankruptcy Court then issued a supplemental memorandum order ("SMO") further discussing its reason for dismissing the first count with prejudice (A304.)

---

[3] Upon settling with Standard Register's secured creditors, the Committee placed its $5 million settlement payment in trust for the benefit of general unsecured creditors and designated EisnerAmper LLP to serve as trustee to continue pursuing its adversary proceeding.  (*See* A56.)  For purposes of the present appeal, the term "Plaintiff" refers to both the Committee, which filed the original complaint, and the Trustee, which filed the Amended Complaint.

## II.   BACKGROUND[4]

### A.   Standard Register's History of Success—and Decline.

For nearly 100 years, Standard Register enjoyed a sustained record of success in the hard-copy print industry. (A63 ¶¶ 20–22.)  But that industry began to decline around the turn of the twenty-first century. (A69 ¶ 57, A72 ¶ 68 (alleging "declines" and "secular headwinds" in the print industry).)  Standard Register's officers and directors were, not surprisingly, aware of this trend and its impact on the company.  From 2010 to 2012, Standard Register's public filings recognized that demand for traditional printing services had been declining because of advances in electronic and internet-based communications, and that the print market was highly competitive and oversupplied. (*See* SA008, SA016, SA028 (discussing market trends).)

Standard Register also faced an "underfunded pension liability and ongoing annual pension funding requirements." (A73 ¶ 73; *accord id.* ¶ 72.)  Standard Register's management and Board were aware of this issue and its operational

---

[4] The following is drawn from the Amended Complaint's allegations, as well as documents integral to and explicitly relied on by the Amended Complaint, SEC filings, publicly available stock prices, and other matters of public record that were properly before the Bankruptcy Court. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (court may consider documents integral to or explicitly relied on by the complaint, public disclosure documents filed with the SEC, and stock prices).  Documents properly considered on Defendants' motion to dismiss were filed as exhibits to the Declaration of Robert J. Baehr in Support of Defendants' Motion to Dismiss. (SA001.)

consequences. The company disclosed that its pension plan was underfunded due to weak market returns and historically low long-term interest rates, causing it to suspend the payment of quarterly dividends. (A75 ¶ 83; SA019; SA022.)

## B. Standard Register Responds to These Challenges by Restructuring and Pursuing a Strategic Combination.

Faced with these challenges, Standard Register's management and Board had a decision to make: They could watch their ship go down, or they could try to right it. They chose the latter. First, in January 2012, management proposed and the Board authorized a "strategic restructuring plan" designed to modernize the company. (SA033–SA034.) As the company explained publicly, Standard Register was undertaking "a strategic restructuring program to better align the Company's resources in support of its growing core solutions business and to reduce costs to offset the impact of declining revenue in its legacy operations." (SA034.) The company projected that the restructuring, which included reductions in workforce and cuts in declining product lines, would result in an estimated $45 million in savings, enough for breathing room and "sufficient liquidity and capital resources to fund [its] near-term operations and growth objectives." (SA035.)

By mid-2012, Standard Register's management and Board also began to explore strategic combinations. "Standard Register was seeking an acquirer or an acquisition target." (A68 ¶ 49.) The company "engag[ed] in negotiations regarding a prospective acquisition of Standard Register by a larger competitor."

7

(A68 ¶ 50.)  But neither management nor the Board ever ***rejected*** any acquisition offer by this larger competitor—because no offer was ever made.  (A310 ¶ 8).

Meanwhile, WorkflowOne, LLC presented itself as a willing acquisition target.  (A68 ¶ 49.)  WorkflowOne was a competitor headquartered, like Standard Register, in Dayton, Ohio.  (*See* A64 ¶ 25.)  The companies had briefly explored the prospect of combining several years earlier.  (A68 ¶ 48.)  In July 2010, Standard Register's Board concluded that merger terms proposed by WorkflowOne "did not make financial sense" unless WorkflowOne's price was "significantly less than $200 million."  (*Id.*)[5]  This opinion was largely based on WorkflowOne's debt.  Indeed, just two months later, in September 2010, WorkflowOne and several of its subsidiaries filed chapter 11 petitions.  (A65 ¶ 35.)  WorkflowOne's plan of reorganization was confirmed in February 2011.  (A65 ¶ 36.)  By 2012, when WorkflowOne again presented itself as an acquisition target, its finances were significantly better than they had been in 2010.  (*See* A65–A66 ¶¶ 37–38.)

Standard Register's financial picture had also changed, as discussed above. Standard Register's management and Board recognized that a combination with a

---

[5]  Plaintiff cherry-picks this quote from Standard Register's Board minutes regarding the decision not to pursue a combination with WorkflowOne in July 2010.  Although true that, at the time, the Board decided the proposal "did not make [financial] sense" at a price above $200 million because WorkflowOne carried too much debt, the Board minutes that Plaintiff quotes note that the Board also concluded that "a transaction with Workflow One makes sense from a business perspective."  (SA039 (quoted at A68 ¶ 48).)

competitor could result in significant synergies that would reduce the combined companies' costs and potentially increase profit margins.   (A64 ¶ 25; A75 ¶¶ 80, 81; A76 ¶ 86; A77 ¶ 93) (acknowledging synergies).   A combination now potentially made sense both financially and from a business perspective.

Standard Register's management and Board did not rush into the WorkflowOne transaction but instead considered the potential combination for a year before it closed.  (*See* A68 ¶ 49; A70–A71 ¶ 61.)  During this time, while still exploring potential alternative combinations with other competitors (A68 ¶ 50), Standard Register's management and Board considered financial projections regarding the combined company to determine whether the WorkflowOne acquisition made business and financial sense.   (A62 ¶ 18; A69–A70 ¶¶ 56–60; A77–A78 ¶¶ 97, 98; A79–A80 ¶¶ 111, 113–14.)   Only after this long period of careful deliberation did the Board approve the WorkflowOne acquisition.   (A70 ¶ 60.)

### C.   Standard Register's Management and Expert Advisors Present Projections and Other Analyses to the Board in Connection with the WorkflowOne Acquisition.

The purported unreliability of the projections presented to the Board in connection with the WorkflowOne Acquisition is the basis of Plaintiff's breach of fiduciary duty claim.  (A62 ¶ 18; A69–A70 ¶¶ 56–61; A73 ¶ 70; A76–A78 ¶¶ 91, 97, 98; A79–A80 ¶¶ 111, 113–114.)  Indeed, before the Bankruptcy Court, Plaintiff

9

described the projections as "the linchpin" of its claims.  (A154.)  The Amended

Complaint, however, alleges nothing about their preparation, much less any facts

to support the conclusory assertion that the projections were "unrealistic and overly

optimistic."  (*E.g.*, A69 ¶ 56; A70 ¶ 59; A79–A80 ¶¶ 111, 113–14.)  This omission

is striking because the projections—along with the minutes for the Board meetings

at which they were presented and discussed—were produced to, and analyzed by,

Plaintiff months before it filed the Amended Complaint.[6]

At bottom, the Amended Complaint asserts that the projections

unrealistically forecasted an increase in revenue after the WorkflowOne

acquisition, because the companies and the industry previously experienced

revenue declines and the combined company intended to cut SG&A expenditures.

(A70 ¶ 59; A77 ¶ 97.)  The Amended Complaint otherwise alleges no facts that

would undermine the projections, much less the Defendants' reliance on them.  For

example, the Amended Complaint does not allege any specific errors in the

methodology used to generate the projections—or that the Defendants were aware

or should have been aware of any such shortcomings when the Board approved the

WorkflowOne acquisition.  Nor does the Amended Complaint allege that the

people who prepared the projections were unqualified or unfamiliar with the

company or the industry.

---

[6] *See infra* notes 24 through 27 and accompanying text.

In some instances, the Amended Complaint mischaracterizes what Plaintiff knows to be true (from the documents it possesses).  For example, the Amended Complaint fails to acknowledge that the projections did ***not*** promise immediate revenue growth, but instead projected a short term decline in revenue followed by longer term revenue growth.  (SA150 ¶ 19.)  Likewise, the Amended Complaint fails to acknowledge that Morgan and Ginnan prepared nearly a dozen sets of projections over the course of the year that Standard Register was exploring its options and that the original projections were ***revised downward*** to take into account Standard Register's performance over that period of time.  (SA149–SA150 ¶¶ 17–18.)

Rather than pleading accurate and sufficient facts, the Amended Complaint summarily repeats its conclusory allegation—viewing the accuracy of the projections through the rear-view mirror of the eventual bankruptcy—that the projections were "unrealistic and overly optimistic."  (*E.g.*, A69 ¶ 56; A70 ¶ 59; A79–A80 ¶¶ 111, 113–114.)  Plaintiff's inability to allege any facts showing a flaw in the preparation of the projections is telling because Plaintiff had the benefit of thousands of pages of documents produced in response to its discovery requests— including Board minutes and the projections and expert opinions that the Board considered in connection with the WorkflowOne acquisition—as well as sworn declarations by the Officer Defendants detailing, among other things, how the

11

projections were prepared and presented.  As evidenced by the fee applications its professionals submitted to the Bankruptcy Court, the content of the allegations contained in the Amended Complaint, and statements made by counsel at oral argument, Plaintiff thoroughly analyzed this discovery prior to filing the Amended Complaint.[7]

The Amended Complaint also never acknowledges that the Board was advised by Bank of America Merrill Lynch ("BAML") and Capstone Advisory Group, even though Plaintiff possessed and analyzed BAML and Capstone materials before filing the Amended Complaint.[8]  From January 2012 until the WorkflowOne acquisition closed in July 2013, BAML advised the Board on several potential combinations and ultimately presented a valuation analysis and fairness opinion regarding the WorkflowOne acquisition.  Among other things, BAML projected that Standard Register would remain in compliance with all covenants under the new debt.  (SA136 ¶ 22; SA152 ¶ 24.)

Capstone presented a solvency opinion to the Standard Register Board.  Among other things, Capstone concluded that the fair value of the company's

---

[7] *See infra* notes 24 through 27 and accompanying text for a discussion of the fee applications and other evidence demonstrating that Plaintiff reviewed this discovery.

[8] *See infra* note 25 for a discussion of evidence showing that Plaintiff reviewed the BAML and Capstone opinions.

assets (on a consolidated basis) would exceed its liabilities, that the company would be able to pay its debts and liabilities as they became due, and that the company would not have unreasonably small capital for the business in which it is engaged.  (SA135–SA136 ¶¶ 21–22.)

### D.    The Market Reacts Favorably to the WorkflowOne Acquisition.

On July 31, 2013, the Board, having considered all available information, met and unanimously approved the WorkflowOne acquisition.  (*See* SA040.)  The deal closed and was announced publicly the next day.  (SA053.)

The market's reaction was overwhelmingly positive.  On July 31, 2013, Standard Register's stock price closed at $3.00 per share.  On August 1, 2013, the day the deal was announced, Standard Register's stock price skyrocketed by 360% and closed at a five-year high of $13.80 per share.  The stock continued to trade above the pre-announcement price for more than a year thereafter:



### E.    The Board Approves Bonuses Tied to the Performance of the Combined Company.

On July 31, 2013, one day before the WorkflowOne acquisition closed, the Board approved transaction-related bonuses for the Officer Defendants with a cash component, half of which was contingent, totaling $900,000 for Morgan and $325,000 for Ginnan.  The Board also approved equity grants of performance-related restricted stock and time-vested restricted stock.  (SA048.)   The latter would fully vest in 2016 and the former would vest "based on the achievement of certain performance goals over three years."  (SA048–SA049.)  The Amended Complaint ignores the equity awards and the contingent nature of the performance-related restricted stock.

The Amended Complaint also looks past the fact that half of the cash bonus was contingent.  For Morgan and Ginnan to be entitled to that portion of the cash bonus, the company had to attain "certain performance-related thresholds" in the "first quarter of 2014"—two quarters after the WorkflowOne transaction closed. (SA048.)  The Amended Complaint acknowledges that Morgan and Ginnan later received the full amount of their cash bonuses (A69 ¶¶ 54–55), implicitly conceding that the combined company enjoyed initial success and satisfied the thresholds upon which the bonuses were contingent.[9]

---

[9] The Amended Complaint also ignores that Standard Register's Board maintained a compensation committee that was advised by outside compensation advisors at

14

### F.     Standard Register Files for Chapter 11.

After the transaction was announced, Standard Register began executing its plan to integrate with WorkflowOne.  Through February 2015 the company was on track to achieve, if not exceed, the level of synergies management had projected. Continued low interest rates in 2014 and 2015, however, plagued the company longer than anticipated.  As a result, high pension obligations continued to hamper the company.   Standard Register missed revenue expectations in the first two quarters of 2014 and, while revenue quickly stabilized and was on track for subsequent quarters, it became evident that Standard Register would breach loan covenants with Silver Point.  (A27 ¶ 133.)  Standard Register and Silver Point were able to agree to short extensions of testing dates for certain loan covenants, but Silver Point refused to enter into any longer-term relief.  (*Id.* ¶¶ 136–37.)  As a result, on March 15, 2015, Standard Register filed for chapter 11 protection.

### G.     The Bankruptcy Court Dismisses the Amended Complaint.

In June 2015, Plaintiff, having been granted standing to pursue estate claims, filed its original complaint.  On August 6, 2015, Plaintiff filed the Amended Complaint.

On February 8, 2016, following two hours of oral argument, the Bankruptcy

the Semler Brossy Consulting Group.  (SA076.)  The Amended Complaint does not—because it cannot—allege that Ginnan or Morgan were involved in any compensation-related decision.  (*See* SA071 ("All members" of the compensation committee are "independent directors").)

15

Court dismissed with prejudice the Amended Complaint's first count, "find[ing] that there are not sufficient allegations in the complaint that would support either a breach of the duty of care or a breach of the duty of loyalty." (A288, 81:11–14.) The court had "little reservation" in dismissing those claims. (*Id.* 81:25.) As to the duty of care claim, the court concluded that, "even on the allegations taken in the light most favorable to the plaintiff, the facts do not support a breach of a duty of care, as articulated under the Ohio business judgment law." (A290, 83:19–22.) In particular, the court found "***no meaningful allegations that would undercut the integrity of the projections*** sufficient to render the directors' decision to rely upon those projections as wrong or a sufficient predicate to assert liability against them." (*Id.* 83:3–7 (emphasis added).) As to the loyalty claim, the court found that the allegations are "conclusory." (*Id.* 83:23–24.) The court found "nothing that would support an entrenchment claim and an allegation that the [Defendants] were acting adversely to . . . what they knew to be the company's best interests . . . . That simply is not contained in this complaint." (A291, 84:10–14.)

In light of the extensive discovery and briefing that had already taken place, and the persistent pleading deficiencies, the Bankruptcy Court concluded that "there is [no] meaningful purpose to be served" by allowing Plaintiff to amend the breach of fiduciary duty claim for a second time. (A291, 86:12–13.) Rather, the court observed, "this kind of litigation and this kind of attack on a prior

16

transaction" is exactly "the reason why there is the business judgement rule." (A289, 82:2–5.)

The Bankruptcy Court also dismissed the fraudulent transfers claims, finding no "sufficient allegations to support the[m.]"   (A292, 85:1–2.)   The court concluded that it was "not satisfied that the plaintiff has articulated that . . . the company failed to obtain reasonably equivalent value associated with the transactions." (*Id*. 85:2–5.)  As a separate basis for dismissal, the court rejected the Amended Complaint's allegations that "the debtor was insolvent at the time of the transaction, or that it was rendered insolvent." (*Id*. 85:15–18.)  The court permitted Plaintiff to re-plead the fraudulent transfer claims (second and third counts) and the follow-on disallowance claim (fourth count).  (A296.)  Plaintiff, however, declined that opportunity, opting instead to stand on the insufficient allegations in its Amended Complaint.

On March 7, 2016, the Bankruptcy Court issued its SMO to provide this Court with a fuller record of its reasons for dismissing the first count with prejudice.  (A304.)  Regarding the duty of care claim, the Bankruptcy Court wrote:

> The Amended Complaint relies on generalized conclusions, as opposed to facts, to demonstrate that the projections were "unrealistic and overly optimistic" or that Standard Register's officers or directors knew or should have known that the company would not meet its projections.

(A308 ¶ 5.)   The court found that the Amended Complaint "fails to plausibly

17

allege" knowledge by the Board of facts that "would have called into question the capability or integrity of company management that prepared the financial projections." (A307 ¶ 4.)  Instead, the Amended Complaint "offers only conclusory statements that the directors had actual knowledge of any methodological problems with the projections." (*Id.*)

Regarding the duty of loyalty claim, the Bankruptcy Court concluded that, "even viewed in the light most favorable to the plaintiff" (A311 ¶ 9), the Amended Complaint pleads "no facts to plausibly establish entrenchment" (A309 ¶ 7) or "to plausibly allege disloyal conduct" (A310 ¶ 9).

> [T]he Amended Complaint alleges no facts that the . . . Defendants chose the WorkflowOne acquisition over an alternative option that, if chosen instead, would have resulted in their losing their positions at Standard Register. . . .  With no offer to be acquired alleged to have even been made, let alone rejected, the Amended Complaint fails to allege facts from which it can be plausibly inferred that Standard Register's officers or directors supported or approved the WorkflowOne acquisition in order to maintain their positions of control.

(*Id.* ¶ 8.)

Finally, the Bankruptcy Court concluded that the Amended Complaint alleges no facts that would establish that a breach of the Defendants' fiduciary duties, as opposed to the "secular headwinds" and "declines in the print industry" alleged in the Amended Complaint, caused Standard Register's bankruptcy or any resulting damages to Plaintiff.  (A311 ¶ 10.)

18

## SUMMARY OF ARGUMENT

As the Bankruptcy Court correctly recognized, the business judgment rule exists to insulate directors and officers from litigation like this, which relies on second-guessing and hindsight bias to attack reasoned business decisions made in times of uncertainty. The Bankruptcy Court's reasoning was supported by the law and the pleadings and should be affirmed.

*First*, the Bankruptcy Court correctly concluded that the Amended Complaint fails to allege facts to overcome the business judgment rule and plausibly show that any Defendant prepared or relied upon the projections with deliberate intent to harm Standard Register or in reckless disregard for its best interests. The Bankruptcy Court was also correct that Plaintiff failed to plead facts to plausibly establish entrenchment, self-dealing, or any other disloyal conduct.

*Second*, the Bankruptcy Court correctly concluded that, in light of the market challenges Standard Register faced *before* the Board approved the WorkflowOne transaction, Plaintiff failed to plausibly establish that any breach of the Defendants' fiduciary duties proximately caused Standard Register's bankruptcy.

*Third*, the Bankruptcy Court was correct that, in light of the pleading deficiencies in the Amended Complaint—which was filed *after* Plaintiff had received and analyzed voluminous discovery, including Board minutes, expert

19

fairness, valuation, and solvency analyses, and the projections that were the "linchpin" of Plaintiff's claims—there was no "meaningful purpose to be served" in allowing Plaintiff to again attempt to amend the breach of fiduciary duty claims.

***Fourth***, the Bankruptcy Court properly dismissed Plaintiff's fraudulent transfer claims, because Plaintiff failed to plead facts showing that Standard Register did not obtain reasonably equivalent value in exchange for the transaction bonuses or that Standard Register was insolvent when it paid the bonuses.

## ARGUMENT

## I.   THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DISMISSAL WITH PREJUDICE OF THE FIDUCIARY DUTY CLAIMS (FIRST COUNT).

Applying federal pleading standards and principles of Ohio corporation law, the Bankruptcy Court properly concluded that the Amended Complaint fails to allege sufficient facts to rebut the robust protections of Ohio's business judgment rule and therefore fails to state a plausible claim that the Defendants breached their fiduciary duties of care and loyalty to Standard Register when they approved the WorkflowOne acquisition.  The Bankruptcy Court also properly concluded that, in light of the extensive discovery reviewed by Plaintiff before it filed the Amended Complaint, as well as Plaintiff's opportunity to defend and explain its position through robust briefing and oral argument, any additional amendment to the first

20

count would be futile.   Accordingly, this Court should affirm the Bankruptcy Court's dismissal with prejudice of the first count.

> **A.     The Bankruptcy Court Correctly Concluded that, Under Ohio Law, Plaintiffs Must Plead Facts, Which, if Proved, Would Overcome the Business Judgment Rule.**

Directors of Ohio corporations typically owe the corporation a duty of care and a duty of loyalty.  *Radol v. Thomas*, 772 F.2d 244, 256–57 (6th Cir. 1985).[10] These duties are codified in the Ohio Revised Code:  "under the duty of care, a director must perform his duties 'with the care that an ordinary prudent person in a like position would use under similar circumstances,'" while "under the duty of loyalty a 'director shall perform his duties as a director . . . in good faith, in a manner he reasonably believes to be in the best interests of the corporation.'" *Radol*, 772 F.2d at 256 (quoting Ohio Rev. Code § 1701.59(B)).[11]

The Ohio business judgment rule creates a presumption "that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation." *Brosz v. Fishman*, 99 F. Supp. 3d 776, 785 (S.D. Ohio

---

[10] Standard Register's internal affairs are governed by the law of Ohio, its state of incorporation.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).  "Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues." *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 918, n.6 (N.D. Ohio 2009).

[11] While the Ohio Revised Code speaks to directors' fiduciary duties, courts apply the statute equally to officers.  *See Koos v. Cent. Ohio Cellular*, 94 Ohio App. 3d 579 (Ohio Ct. App. 1994) (applying statute to officers).

21

2015); *Monday v. Meyer*, No. 1:10-cv-1838, 2011 WL 5974664, at *3 (N.D. Ohio Nov. 29, 2011); *accord Gries Sports Enters., Inc. v. Cleveland Browns Football Co.*, 26 Ohio St. 3d 15, 20 (1986).  In light of this presumption, directors and officers cannot be held liable for breach of fiduciary duty under Ohio law if their actions "'***can be attributed to any rational business purpose***.'"  *Goodyear*, 2007 WL 43557, at *10 (emphasis added) (quoting *Koos*, 94 Ohio App. 3d at 590).  As the Sixth Circuit has held:

> Ohio courts adhere to the "business judgment rule, " and ***will not inquire into the wisdom of actions taken by the directors*** in the absence of fraud, bad faith or abuse of discretion . . . The business judgment rule recognizes that many important corporate decisions are made under conditions of uncertainty, and ***it prevents courts from imposing liability on the basis of ex post judicial hindsight***.

*Radol*, 772 F.2d at 256–57 (emphasis added) (citations omitted).  Likewise, as this Court recently concluded, "a court will not second-guess the fiduciary's decision as long as it has any rational business purpose, even if the decision ends up being flawed in hindsight."  *In re Ultimate Escapes Holdings, LLC*, No. 15-241-RGA, 2016 WL 743371, at *6 (D. Del. Feb. 23, 2016).  Only in "extraordinary circumstances" may a court "substitute its business judgment for that of directors."  *La. Mun. Police Emps.' Ret. Sys. v. Crawford*, 918 A.2d 1172, 1176 (Del. Ch. 2007).

ny-1236589

The business judgment rule has been codified in Ohio Revised Code § 1701.59.  To ensure the rule's efficacy in lowering the frequency and cost of litigation challenging directorial action,[12] that section sets a high bar for plaintiffs asserting fiduciary duty claims against fiduciaries of an Ohio corporation:

> A director shall not be found to have violated the director's duties . . . unless it is proved by ***clear and convincing evidence*** that the director has not acted in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances . . . .
>
> \*       \*       \*
>
> A director shall be liable in damages for any action that the director takes or fails to take as a director only if it is proved by ***clear and convincing evidence*** in a court of competent jurisdiction that the director's action or failure

---

[12] In 1986, Ohio's General Assembly amended the law "to significantly increase the protection afforded to corporate directors." *Stepak v. Schey*, 51 Ohio St. 3d 8, 13 (1990).  The business judgment rule recognizes that "[i]f management were liable for mere good faith errors in judgment, few capable individuals would be willing to incur the financial and emotional risk of serving as a director or officer." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 454 (N.D. Ohio 1993).  To mitigate this disincentive, the Ohio legislature codified the business judgment rule "with the specific intent of bolstering protection of directors from litigation." *In re Amcast Indus. Corp.*, 365 B.R. 91, 109–10 (Bankr. S.D. Ohio 2007).  Recognizing the full "financial and emotional" costs of modern civil litigation, *Granada Invs.*, 823 F. Supp. at 454, the Ohio statute was enacted both to "prevent[] courts from imposing liability on the basis of ex post judicial hindsight" and to "lower[] the volume of costly litigation challenging directorial actions." *Radol*, 772 F.2d at 257; *see also* Deborah Cahalane, *1986 Ohio Corporation Amendments: Expanding the Scope of Director Immunity*, 56 U. Cin. L. Rev. 663, 670–73 (1987) (1986 amendments were intended to combat the frequency and cost of claims against corporate directors).

23

> to act involved an act or omission undertaken with **deliberate intent to cause injury to the corporation** or undertaken with **reckless disregard for the best interests of the corporation**.

Ohio Rev. Code § 1701.59(D)(1),(E) (emphases added).

The Ohio Revised Code expressly insulates Ohio directors from liability when they rely on information prepared by management, other directors, and outside experts, accountants, or consultants:

> In performing a director's duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by . . . directors, officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented; . . . [c]ounsel, public accountants, or other persons as to matters that the director reasonably believes are within the person's professional or expert competence; [and], [a] committee of the directors upon which the director does not serve . . . as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

*Id.* § 1701.59(C).  A director can be denied this protection only if he or she "ha[d] knowledge concerning the matter in question that would cause reliance on [such] information, opinions, reports, or statements . . . to be unwarranted."  *Id.* § 1701.59(D)(2).

Plaintiff bears the burden of rebutting the business judgment rule's presumption in favor of directors and officers with well-pleaded factual

24

allegations. *NCS Healthcare, Inc. v. Candlewood Partners, LLC*, 160 Ohio App. 3d 421, 428–29 (Ohio Ct. App. 2005). "Plaintiffs must plead facts, as distinct from generalized conclusions, which, if proved, would overcome the presumption that [the directors] have acted in good faith and in the best interests of the corporation." *In re Gas Natural, Inc.*, No. 1:13 CV 02805, 2015 WL 3557207, at *15 (N.D. Ohio June 4, 2015). Thus, to overcome the business judgment rule and state a claim for breach of fiduciary duty, Plaintiff must plead ***facts*** sufficient to show that the Defendants "acted with 'deliberate intent' or 'reckless disregard'" for the best interests of Standard Register and that reliance on the projections and the BAML and Capstone opinions was "unwarranted." *Goodyear*, 2007 WL 43557, at *9.

Plaintiff is thus wrong when it argues that Ohio's business judgment rule "'imposes a burden of proof . . . , not a burden of pleading.'" (D.I. 15 (Appellant's Br.) 25.) The lone case on which Plaintiff relies for this assertion, *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, No. 1:11-cv-451, 2011 WL 4383368, at *2 (S.D. Ohio Sept. 20, 2011), is contradicted by *Gas Natural* and *Goodyear*, both of which hold that, under Ohio law, plaintiffs must plead facts that, if proved, would overcome the Ohio business judgment rule. *Gas Natural,* 2015 WL 3557207, at *15; *Goodyear*, 2007 WL 43557, at *9. Unlike *NECA-IBEW*, *Gas Natural* and *Goodyear* are consistent with the legislative purpose behind the Ohio business judgment statute (as well as the rationale of *Twombly* and *Iqbal*)—to

25

"lower[] the volume of costly litigation challenging directorial actions" *Radol*, 772 F.2d at 257—which can be accomplished most effectively at the pleading stage.

Moreover, notwithstanding the excerpt Plaintiff cites, the court in *NECA-IBEW* actually went on to review whether the factual allegations in the complaint were sufficient to overcome the business judgment rule. The court concluded that the "plaintiff has made adequate pleadings that 'the Cincinnati Bell Board is not entitled to business judgment protection for its 2010 executive pay hikes'" because "[t]he complaint provides factual allegations and not simply conclusory allegations." 2011 WL 4383368, at *3. Thus, *NECA-IBEW* actually supports the Defendants' position that this Court should apply the *Twombly-Iqbal* standard to determine whether the Amended Complaint contains sufficient factual allegations—not just conclusory allegations—that would overcome the business judgment rule.

Because the Bankruptcy Court correctly interpreted the substance of, and the pleading requirements for, a breach of fiduciary duty claim brought under Ohio law, this Court should affirm.

### B. The Bankruptcy Court Correctly Concluded That the Amended Complaint Alleges No Facts that Would Establish a Breach of the Duty of Care.

The Amended Complaint's duty of care claim hinges on the implausible theory that the Defendants "knew or should have known" that the projections

presented to the Board in connection with the WorkflowOne acquisition were "unrealistic and overly optimistic."   (A79–A80 ¶¶ 111, 113–14.)   As the Bankruptcy Court correctly found, the Amended Complaint fails to allege any facts—as opposed to generalized conclusions—demonstrating that the projections were in fact "unrealistic and overly optimistic" or that the Defendants knew or should have known it at the time.  (A308 ¶ 5.)  In light of the business judgment rule, mere disagreement with or second-guessing of projections cannot serve as the basis for liability.  *See Goodyear*, 2007 WL 43557, at *10; *Koos*, 94 Ohio App. 3d at 590.

The Amended Complaint alleges no specific material error in the methodology used to generate the projections, let alone any facts that, if proved, would establish that any of the Defendants was aware or should have been aware of any such shortcoming.  (A307 ¶ 4; *Miramar Firefighters Pension Fund v. AboveNet, Inc.*, No. 7376-VCN, 2013 WL 4033905, at *6 (Del. Ch. July 31, 2013) ("[Plaintiff] has not explained adequately [in its Complaint] why any of the inputs used [in the financial projections] were *per se* unreasonable.").)  The Amended Complaint does not allege, for example, that the projections failed to incorporate the type of historical data or to account for the type of future difficulties suggested

27

by Plaintiff in its brief.  (D.I. 15 (Appellant's Br.) 30.)[13]  The Amended Complaint does not (because it cannot) allege that management was unqualified to prepare the projections or that the Directors failed to consider them.  Nor does the Amended Complaint allege that it was unreasonable or reckless for the Defendants:

- to expect that a combination with WorkflowOne could result in significant synergies—including from consolidation of manufacturing facilities, IT functions, sales, marketing, paper purchasing, and freight— that would reduce the combined companies' costs and potentially increase profit margins;

- to expect significant opportunities for revenue growth for the combined company because there was little overlap in their customer bases;

- to anticipate that interest rates would increase over the long term and thereby reduce the company's underfunded pension liability;

- to estimate WorkflowOne's future revenues based on Standard Register's comprehensive due diligence review of WorkflowOne; or

- to believe that Standard Register's strategic restructuring program would start to pay off.

---

[13] The cases cited in Plaintiff's brief are inapposite because they all involved leveraged buyouts, which "'present great potential for abuse'" and therefore may be subject to a heightened level of review.  *In re Jevic Holding Corp.*, No. 08-11006 (BLS), 2011 WL 4345204, at *10 (Bankr. D. Del. Sept. 15, 2011). Moreover, unlike here, in *In re Healthco Int'l, Inc*, 195 B.R. 971 (Bankr. D. Mass. 1996), the complaint alleged several specific problems with the projections supporting the leveraged buyout.  And in *Moody v. Sec. Pac. Bus. Credit, Inc.*, the court affirmed the district court's finding that the projections at issue were "reasonable and prudent when made."  971 F.2d 1056, 1073 (3d Cir. 1992).  The court noted that the challenged projections were not unreasonable merely because, in "hindsight" the defendants' assumptions "were not entirely on the mark."  *Id.* at 1074. Thus, to the extent it is applicable, *Moody* actually supports the Defendants' argument.

28

Moreover, the Amended Complaint fails to acknowledge that Morgan and Ginnan repeatedly revisited the projections during the year that Standard Register was exploring its options and revised the original projections downward to take into account Standard Register's performance over that period of time.  It also ignores that the projections did ***not*** promise immediate revenue growth, but instead projected a short term decline in revenue followed by longer term revenue growth. (SA149–SA150 ¶¶ 17–19.)   In short, the Amended Complaint contains no facts that would overcome the presumption that the Defendants prepared, considered, and relied on the projections in Standard Register's best interests.

Even on appeal, Plaintiff can muster only three alleged "facts" (two of which are virtually identical) in support of the Amended Complaint's repeated allegation that the projections were "unrealistically optimistic:" (1) there were "ongoing declines in the print industry;" (2) unnamed "analysts" forecasted a decline in average EBITDA margin in the print industry from 2012 through 2015; and (3) in 2012, Standard Register cut SG&A expenditures and lost revenue.[14]   (D.I. 15 (Appellant's Br.) 31–32.)   Such conclusory allegations cannot plausibly support a breach of fiduciary duty claim.   The Amended Complaint fails to allege any facts

---

[14]  For this argument, Plaintiff apparently believes that the cut in SG&A expenditures—not the "ongoing decline in the print industry," the "forecasted . . . average EBITDA margin contraction . . . from 2012-2015," or any other myriad factors—was the sole cause of Standard Register's 2012 revenue loss.

showing why unnamed "analysts' projections for comparable companies and the Debtors' industry" should be credited at all (A77 ¶ 97), let alone credited more than the projections prepared by the Officers and professionals analyzing this specific deal between these specific companies. *Cf. Miramar Firefighters*, 2013 WL 4033905, at *4 (finding that allusions to outside analyst commentary were insufficient to establish a breach of the duty of loyalty and overcome the business judgment rule). Nor, as explained above, does the Amended Complaint allege any facts that would call into question the assumptions regarding the potential benefits of synergies, expanded customer bases, and the like that were used in making the projections.

The Bankruptcy Court therefore correctly concluded that "there are no meaningful allegations that would undercut the integrity of the projections sufficient to render the directors' decision to rely upon those projections as wrong or a sufficient predicate to assert liability against them." (A290, 83:3–7.) The Bankruptcy Court correctly recognized that, "even on the allegations taken in the light most favorable to the plaintiff," the duty of care claim is based solely on "hindsight." (*Id.* 83:15–16, 19–22.) Such after-the-fact disagreement with a projection does not render management's projections "unreasonable." Predictions "are, at best, educated guesses" and therefore "exactly the kind of business decision that the business judgment rule respects." *In re Adelphia Commc'ns*

*Corp.*, No. 02-41729REG, 2004 WL 1634538, at *3 (Bankr. S.D.N.Y. June 22, 2004); *accord In re Key3Media Grp., Inc.*, 336 B.R. 87, 95–96 (Bankr. D. Del. 2005), ("Predicting the operating performance of the [acquired] assets was an exercise of the business judgment . . ."), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006).

Plaintiff argues that the Bankruptcy Court "misinterpreted section 1709.59(D)(2) of the Ohio Revised Code" by holding that Plaintiff must plead "actual knowledge" of the projections' alleged deficiencies. (D.I. 15 (Appellant's Br.) 28 (quoting A307 ¶ 4).)   This argument, however, misconstrues the Bankruptcy Court's opinion.  First, the Bankruptcy Court concluded that ***none*** of the allegations in the Amended Complaint regarding the projections "would undercut the integrity of the projections sufficient to render the directors' decision to rely upon [them] . . . as wrong or a sufficient predicate to assert liability against them."  (A290, 83:4–7.)  Whether the Defendants knew or should have known these facts is thus of no moment to the Bankruptcy Court's holding.  Second, the sentence to which Plaintiff objects is taken out of context.  A fair reading leaves no doubt that the Bankruptcy Court was addressing the Amended Complaint's "theory that the defendants 'knew or should have known' that the projections presented at the Board meetings in connection with WorkflowOne acquisition were 'unrealistic

and overly optimistic'" in its totality.   (A307 ¶ 4; *see also* A308 ¶ 5 (citing "reckless disregard" standard).)[15]

At bottom, the Amended Complaint relies on the conclusory assertion that the Defendants "should have known" that the projections were unachievable. Naked assertions that a fiduciary "should have" known something, however, are insufficient to create an inference that a director had a culpable state of mind. *See Raul v. Rynd*, 929 F. Supp. 2d 333, 348 (D. Del. 2013) (dismissing complaint); *Goodyear*, 2007 WL 43557, at *9 (dismissing fiduciary duty claim where plaintiffs alleged that Ohio fiduciaries "as a group, knew or should have known of the inaccuracy of the statements about which the plaintiffs complain").

The cases cited by Plaintiff neither involve Ohio law nor compel a contrary conclusion.   For example, in *F.D.I.C. v. Faigin*, No. CV 12-03448 DDP(CWx), 2013 WL 3389490, *1–2, *6 (C.D. Cal. July 8, 2013) (California law), the complaint alleged several specific errors with respect to each of the challenged loans.   Similarly, and contrary to Plaintiff's parenthetical summary, in *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 791–92 (Bankr. E.D. Va. 2012) (Virginia and Maryland law), the complaint alleged far more than the directors'

---

[15] Under Ohio law, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012).

awareness of "the decline and uncertainty in the market."  Rather, the complaint detailed numerous facts known to the directors about the company's troubled financial status, as well as facts that, if established, would show that the directors nevertheless failed to discuss these issues for an extended period of time.  *See also DCG & T ex rel. Battaglia*, 68 F. Supp. 3d 579, 588 (E.D. Va. 2014) (applying Virginia law, finding that the plaintiff adequately pleaded the staleness of the fairness reports on which the defendants relied, among other facts).  Such detailed factual allegations stand in stark contrast to the conclusory allegations contained in the Amended Complaint here.  *Cf. In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 WL 1020471, at *25 (Del. Ch. Mar. 23, 2012) ("Credit Suisse's errors were neither conspicuous nor significant" and therefore plaintiffs could not show that the board acted in bad faith by relying on what it knew was an inaccurate analysis), *aff'd in part, rev'd in part*, 59 A.3d 418 (Del. 2012).

Accordingly, the Bankruptcy Court properly dismissed the Amended Complaint's duty of care claim, and this Court should affirm.[16]

---

[16] Plaintiff argues on appeal that "the Bankruptcy Court should not have considered the Advisors' Opinions as they were not referenced in the [Amended Complaint]." (D.I. 15 (Appellant's Br.) 33.)  Plaintiff is wrong on two counts.  First, the Plaintiff's admitted failure to even address the Advisors' Opinions in the Amended Complaint (knowing that such opinions were provided) is an independent reason to dismiss for failing to meet the pleading requirements created by Ohio Rev. Code § 1701.59(C) and (D)(2).  (*See, e.g.*, A117–A120.)  Second, in any event, the Bankruptcy Court never expressly relied on the Advisors' Opinions in either the bench ruling or the SMO.

**C.    The Bankruptcy Court Correctly Concluded that the Amended Complaint Pleads No Facts that Would Establish a Breach of the Duty of Loyalty.**

This Court should also affirm the Bankruptcy Court's dismissal of the Amended Complaint's duty of loyalty claim.  The Amended Complaint asserts that the Defendants allegedly sought to preserve their "positions of control"—to entrench themselves—and that the Officer Defendants were supposedly improperly motivated by transaction bonuses.  (A80 ¶ 115.)[17]  Both theories are implausible and fail to state a claim for breach of the duty of loyalty.  Accordingly, this Court should affirm their dismissal.

**1.    The Bankruptcy Court Correctly Found that the Amended Complaint Pleads No Facts to Plausibly Establish Entrenchment.**

"A successful claim of entrenchment requires plaintiffs to prove that the defendant directors engaged in action which had the effect of protecting their tenure and that the action was motivated *primarily or solely* for the purpose of achieving that [entrenchment] effect."  *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 186 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006) (cited at A309

---

[17] While Plaintiff alleged in the conjunctive that the Directors and Officers were not disinterested because of "maintenance of their positions of control *and* the receipt of significant transaction bonuses and other incentive compensation" (A80 ¶ 115) (emphasis added), Plaintiff has not alleged—nor could it allege—that the Directors received any incentive compensation based on the WorkflowOne acquisition.

34

¶ 7).  The Amended Complaint's sole allegation in support of its entrenchment theory is that, by approving the WorkflowOne acquisition, the Defendants somehow "ensured that Standard Register's senior management and the Board . . . would remain in place and retain their equity holdings."  (A68 ¶ 51.)  Even now, Plaintiff simply restates its conclusory allegation that the WorkflowOne acquisition somehow "ensured that [the Defendants] . . . would remain in place and retain their equity holdings" without pointing to any factual allegations that, if proved, would support such a finding.  (D.I. 15 (Appellant's Br.) 38.)

As the Bankruptcy Court explained, courts are "typically chary of entrenchment claims tied simply to compensation, as nearly every case presents circumstances of management staying in their jobs and receiving their paychecks." (A309 ¶ 7.)  That is because "[b]y its very nature, a board decision to reject a merger proposal could always enable a plaintiff to assert that a majority of the directors had an entrenchment motive."  (A309–A310 ¶ 7 (quoting *Gantler v. Stephens*, 965 A.2d 695, 707 (Del. 2009).)  This observation is entirely consistent with Ohio law, which is clear that "directors are not deemed self-interested merely by virtue of the fact that the subject matter upon which they are acting may or may not result in a loss of their offices as directors or because a change or potential change in control is involved."  Ohio Rev. Code § 1701.60, 1986 Committee Note;

*see also Koos*, 94 Ohio App. 3d at 590 (directors' stock ownership "is not sufficient to deprive their decision of the benefit of the business judgment rule").

But the flaw here is even more fundamental:  "the Amended Complaint alleges no facts that the Director and Officer Defendants chose the WorkflowOne acquisition over an alternative option that, if chosen instead, would have resulted in their losing their positions at Standard Register."  (A310 ¶ 8.)  Despite referring to "negotiations regarding a prospective acquisition of Standard Register by a larger competitor," the Amended Complaint does not allege that the larger competitor ever offered to purchase Standard Register.   (A68 ¶ 50.)  The Bankruptcy Court correctly recognized this sleight of hand, which is not a factual allegation that would support an entrenchment claim.  (*See* A310 ¶ 8 (citing A68 ¶ 50).)  "With no offer to be acquired alleged to have even been made, let alone rejected, the Amended Complaint fails to allege facts from which it can be plausibly inferred that [the Defendants] . . . supported or approved the WorkflowOne acquisition in order to maintain their positions of control."  (A310 ¶ 8; *see also In re Fedders N. Am., Inc.*, 405 B.R. 527, 542 (Bankr. D. Del. 2009) (Shannon, J.) ("[S]imple allegations of such 'entrenchment motives,' without

36

more, are insufficient to state a claim that directors are financially interested . . .").)[18]

Plaintiff now argues that the Bankruptcy Court applied the wrong pleading standard when it reached this result, because the Defendants' motion cited two Delaware state cases, *Benihana* and *Bodkin v. Mercantile Stores Co.*, No. 13770, 1996 WL 652763 (Del. Ch. Nov. 1, 1996), which it contends were decided under the heightened demand futility pleading standard established by Delaware Chancery Court Rule 23.1. (D.I. 15 (Appellant's Br.) 40–41.) This argument misses the mark. First, the Bankruptcy Court did ***not*** rely on, or even cite to, Chancery Court Rule 23.1 in reaching its decision. As noted above, the court cited *Gantler v. Stephens*, a case decided under Chancery Court Rule 12(b)(6), which does not incorporate the "particularity" requirement of Rule 23.1. (A309 ¶ 7.) Rather, Chancery Court Rule 12(b)(6) simply requires a showing of "conceivability"—a ***lower*** threshold than the "plausibility" standard required by the federal rule. *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536–37 (Del. 2011). Thus, if anything, the Bankruptcy Court's

---

[18] Plaintiff's suggestion that the Defendants were also motivated by a desire to "retain their equity holdings" in Standard Register (A68 ¶ 51) is similarly not supported by any allegation that they rejected an offer that would have resulted in the Defendants losing their equity interests. Moreover, by preserving their equity interests, the Defendants remained in the same position as all other shareholders—if the company failed, they, too, stood to lose. *See, e.g.*, *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1005 (Del. Ch. 2005).

opinion demonstrates that Plaintiff's entrenchment allegations fail even under scrutiny *less* rigorous than that required under *Twombly* and *Iqbal*.

Second, the Defendants, the Bankruptcy Court (A309 ¶ 7)—and Plaintiff in its appellate brief (D.I. 15 (Appellant's Br.) 37)—all cite *Benihana* simply for the elements required to establish an entrenchment claim, not for its result.[19]  It is true that the Defendants also cited *Bodkin* as an example of a complaint that, like the Amended Complaint here, lacked a factual allegation that a proposed transaction posed an actual threat to the directors' positions on the board, but such a failure would be fatal under any pleading standard.  *Bodkin*, 1996 WL 652763, at *3. Thus, the pleading standards applied in *Benihana* and *Bodkin* are irrelevant to the Defendants' argument and, more importantly, to the Bankruptcy Court's reasoning.[20]

Instead, the relevant pleading standard is set out in *Twombly* and *Iqbal*, which require a plaintiff to allege factual matter in a complaint sufficient to

---

[19] Contrary to Plaintiff's contention, the court in *Benihana* did not dismiss the plaintiff's entrenchment claim under Rule 23.1 but instead found the claim unsupported by the evidence following a trial.  *See* 891 A.2d at 155 ("This Opinion reflects the Court's post-trial findings of fact and conclusions of law.").

[20] Notably, Judge Shannon dismissed the entrenchment claim in *Fedders*, which the Defendants also cited below but which Plaintiff does not mention, under the Rule 12(b)(6) standard.  *See* 405 B.R. at 536–37.  It is unlikely (to say the least) that Judge Shannon applied the wrong standard of review to the entrenchment claim here.

38

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, as the Bankruptcy Court correctly concluded, Plaintiff was required, but failed, to "allege facts from which it can be plausibly inferred that Standard Register's officers or directors supported or approved the WorkflowOne acquisition in order to maintain their positions of control."  (A310 ¶ 8.)  Thus, consistent with the *Twombly–Iqbal* standard, the Bankruptcy Court found that the entrenchment "allegations are conclusory" and required dismissal.  (*See* A290, 83:23–25.)  Accordingly, the Bankruptcy Court's dismissal of the duty of loyalty claim should be affirmed.

### 2. The Bankruptcy Court Correctly Found that the Amended Complaint Pleads No Facts to Plausibly Demonstrate Disloyal Conduct.

In the Bankruptcy Court, Plaintiff conceded, or at least abandoned, its claim that Morgan and Ginnan knowingly or recklessly prepared unrealistic projections because they wanted to receive a one-time bonus that represented a mere fraction of their significant equity in the company.  In Plaintiff's opposition to the Defendants' motion to dismiss below, Plaintiff asserted in conclusory fashion that the transaction bonuses were "outsized."  (A153.)  That single reference cannot preserve the argument. [21]  And, even if it could, Plaintiff expressly disavowed any

---

[21] Plaintiff's implausible and conclusory assertions, without more, amounted to an abandonment of the claim.  *See, e.g.*, *United States v. Berkowitz*, 927 F.2d 1376,

challenge to the Board's decision to award the bonuses.  (A163 ("This is **not** a challenge to the Board's actions in approving the Transaction Bonuses or awarding compensation generally.").)   Plaintiff thus conceded the bonuses **were properly awarded by the Board and valid**.

On appeal, Plaintiff nonetheless tries to resurrect this argument to support an implausible loyalty claim.  Even if Plaintiff could do so, the claim fails.  Plaintiff simply repeats its conclusory argument that Morgan and Ginnan were improperly motivated by the transaction bonuses, which Plaintiff suggests were "outsized" in comparison to compensation received by other executives.   But the Amended Complaint alleges only that the total compensation packages for Morgan and Ginnan, including the transaction-related bonuses, were larger in 2013 than they were in 2012 (A79 ¶ 106) and that the bonuses were comparable to a competitor's (*id.* ¶ 107).  (*See also* A291, 84:17–19 ("We're talking about performance bonuses that, at least in amounts, do not shock the Court, from experience in other transactions.").)

Furthermore, Plaintiff never confronts the implausibility of its theory under any scenario.   The transaction bonuses did not create a conflict between Morgan and Ginnan and the company.   Rather, the equity component (which Plaintiff

---

1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

ignores) *aligned* their interests with the long-term performance of the company.[22]

And those interests already were aligned, as the equity bonuses were on top of significant personally held ownership stakes in the company.[23]   As other courts have recognized, and as common sense would dictate, the equity holdings of officers or other fiduciaries align their interests with those of the corporation's shareholders.  *See, e.g.*, *Toys "R" Us*,  877 A.2d at 1005 ("[T]he fact that [the CEO] was so heavily invested in the Company's equity no doubt encouraged him to take value-maximizing steps without regard for his future employment because he recognized that a good deal for Toys "R" Us stockholders would leave him very wealthy, too.").

---

[22] On July 31, 2013, in addition to the cash bonuses, the Board approved certain equity grants in connection with the closing of the WorkflowOne transaction, consisting of time-vested restricted stock that would fully vest in 2016 and performance-related restricted stock that would vest "based on the achievement of certain performance goals over three years."  (SA048–SA049.)  Because Plaintiff has no response to the fact that the award of stock grants further aligned the interests of  Morgan and Ginnan with the long-term performance of the company, Plaintiff simply ignores the equity portion of the transaction bonuses.

[23] As of January 31, 2014, Mr. Ginnan owned 44,728 shares (excluding options) and Mr. Morgan owned 166,387.  On August 1, 2013, when the company acquired WorkflowOne, those shares were worth $13.80 apiece, meaning that their equity holdings dwarfed the much smaller transaction-related cash bonuses they received. Likewise, both Morgan and Ginnan had earned significant amounts under the company's supplemental retirement plan through 2013—i.e., nearly $500,000 and $200,000, respectively.  (SA080, SA089, SA098.)

41

If more were needed, Plaintiff's theory is also illogical.  Like the equity bonus, half of the cash bonus was contingent on closing, and the other half was contingent on achievement of certain financial thresholds.  If, as Plaintiff posits, Morgan and Ginnan were improperly motivated by the possibility of the bonuses, it would stand to reason that they would prepare conservative projections for the combined company, because "overly optimistic" and "unrealistic" projections would be difficult to achieve—meaning that Morgan and Ginnan might never receive half of their bonuses, because the performance-related threshold would not be satisfied.

Nevertheless, Plaintiff's puzzling theory is that Morgan and Ginnan prepared projections in pursuit of a transaction that they knew would bankrupt the company that actually employed them, destroy the value of their substantial shareholdings, result in the forfeiture of significant retirement plans, and potentially eliminate their livelihoods.  Under Ohio law, such implausible theories and conclusory allegations do not rebut the statutory presumption that Morgan and Ginnan were acting for the best interests of the Company, much less provide a basis for liability.  *See Koos*, 94 Ohio App. 3d at 594 ("The burden is on the party challenging the decision to establish facts rebutting the presumption' of good faith of directors invoked by the business judgment rule."); *NCS Healthcare*, 160 Ohio App. 3d at 429 (affirming dismissal where "[plaintiff] failed to plead any facts

42

sufficient to avoid the presumption that the directors acted in the best interest of [the company] pursuant to the business-judgment rule"). Accordingly, dismissal of the breach of loyalty claim should be affirmed.

### D. The Bankruptcy Court Correctly Concluded that the Amended Complaint Pleads No Facts to Establish Proximate Cause of Any Injury.

The Bankruptcy Court also properly dismissed the fiduciary duty claim for the additional, independent reason that the Amended Complaint fails to allege facts that would support a plausible finding of proximate cause. Under Ohio law, "if a plaintiff establishes that a defendant breached his fiduciary duty, the plaintiff must then establish that the breach proximately caused his damages." *Kademian v. Marger*, 2014 Ohio 4408 ¶ 48 (Ohio Ct. App. 2014). The Bankruptcy Court correctly concluded that the Amended Complaint alleges no facts that would establish that Standard Register's bankruptcy—or any damages resulting therefrom—was proximately caused by the Defendants' supposed failure to exercise their duties of care or loyalty in connection with the WorkflowOne acquisition, rather than by market forces. (A311 ¶ 10.)

The Amended Complaint attempts to pin the company's ultimate insolvency on the WorkflowOne transaction. But the Amended Complaint itself alleges that the traditional print industry and Standard Register's financial condition were in decline and that Standard Register's pension problems had begun long before the

43

WorkflowOne acquisition.  (A69 ¶ 57; A72 ¶ 68.)  The Amended Complaint also ignores that revenues actually *increased* after the acquisition.  (*See* SA105 (reporting increase in full-year and fourth quarter revenue "due in large part to acquisition of WorkflowOne," and further reporting that 2013 full-year revenue was $719.8 million, compared with $602 million for 2012, and fourth quarter revenue was $242 million, "an increase of 69 percent from the fourth quarter of 2012").)  Moreover, although Plaintiff asserts its claims with the benefit of hindsight, the Amended Complaint ignores the market's overwhelmingly positive reaction to the acquisition:  On the day the purchase was announced, Standard Register's stock price increased by 360% and remained above the pre-acquisition price for nearly a year.  (*See supra* Statement of the Case section II.D.)

In short, Plaintiff's hindsight attempt to attribute damages to the WorkflowOne acquisition is implausible.  For this separate reason, this Court should affirm the Bankruptcy Court's dismissal of the first count.

### E.    This Court Should Affirm the Bankruptcy Court's Dismissal of the First Count with Prejudice.

The Bankruptcy Court dismissed the first count with prejudice because it "d[id]n't believe that there is a meaningful purpose to be served" by allowing Plaintiff to amend that claim for a second time.  (A76, 86:12–13.)   Although Plaintiff asserts that "the Bankruptcy Court did not explain its reasoning for its dismissal of Count I with prejudice," (D.I. 15 (Appellant's Br.) 46), in fact Judge

44

Shannon wrote the March 7, 2016, Supplemental Memorandum Order for the express purpose of "address[ing] the Court's reasoning behind its dismissal of Count I *with prejudice*." (A305 n.2 (emphasis added).)  In light of the extensive and highly relevant discovery already analyzed by Plaintiff, the comprehensive briefing and lengthy oral argument on the motion to dismiss, Plaintiff's prior amendment to its breach of fiduciary duty claim, and the glaring deficiencies that still remained in the Amended Complaint's factual allegations, the Bankruptcy Court was well within its discretion to conclude that the fiduciary-duty claim could not be salvaged by yet another amendment and therefore should be dismissed with prejudice.  *Foman*, 371 U.S. at 182; *Fraser*, 352 F.3d at 116.  Reviewing that decision under the deferential abuse of discretion standard, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993), this Court should affirm.

Plaintiff argues that the Bankruptcy Court abused its discretion because it "did not explain its reasoning for its dismissal of Count I with prejudice" after oral argument or in its Supplemental Memorandum Order.  (D.I. 15 (Appellant's Br.) 46.)  But that is not true.  *First*, in ruling from the bench and providing additional explanation in the SMO, the Bankruptcy Court thoroughly detailed the deficiencies in the Amended Complaint's factual allegations.  The Bankruptcy Court had "little reservation with respect to the breach of fiduciary duty counts," because it concluded, correctly, that Plaintiff's hindsight-based attack was "the reason why

45

there is the business judgment rule." (A288–289, 81:25–82:5.)

**Second**, the Bankruptcy Court repeatedly emphasized that Plaintiff had the benefit of substantial discovery. (A214, 7:21–23 (explaining that appellant "is the successor, effectively to a Plaintiff . . . that had all the benefits of Discovery Rule 2004 and whatever else they would get during the bankruptcy case"); A284, 77:13–14 ("You have more than a trustee would typically have, and I don't think you can really dispute that.").) Plaintiff now disputes this finding, arguing that the discovery was "limited [and] irrelevant" and that it "did not focus on [such] extraneous discovery" prior to filing the Amended Complaint. (D.I. 15 (Appellant's Br.) 19–21.) Not so. The discovery provided to Plaintiff was ample, responsive, and relevant,[24] consisting of, among other things, all Board minutes and all projections and expert opinions presented to the Board in connection with the WorkflowOne acquisition. And Plaintiff read all of it. As demonstrated by its fee applications, Plaintiff spent hundreds of hours analyzing this discovery since March 2015.[25] Plaintiff also possessed sworn declarations by the Officer

---

[24] (*See* SA116 ¶ 10 (the company "produced a number of documents responsive to the Committee's discovery requests"); SA120, 47:7–9 ("Silver Point produced almost 50,000 pages of documents and the Debtors did the same.").)

[25] (*See e.g.*, SA122–SA129, D.I. 5 (Committee's fee applications evidencing hundreds of hours spent on discovery).) The Committee's fee applications further reveal time spent reviewing the information on which the Board relied in analyzing the WorkflowOne acquisition. (*See* SA123 (time spent reviewing board minutes and meeting materials); SA125 (time spent reviewing "solvency and projection

46

Defendants detailing, among other things, how the projections were prepared and presented.[26]   It should come as no surprise, then, that the Amended Complaint contains allegations, and sometimes direct quotations, taken from the projections and Board minutes.[27]   Indeed, plaintiff's counsel conceded at oral argument on the motion to dismiss that "the allegations in this complaint already reflect some of what we were able to learn through that [discovery] process."  (A281, 74:5–7.)

*Third*, Plaintiff already amended the complaint once, as the Bankruptcy Court knew.  Having once failed to fix its claim through amendment, despite possessing highly relevant discovery and other information regarding management's projections—the self-described "linchpin" of its breach of fiduciary duty claim—there was no reason to believe that further amendment would salvage that claim.

*Fourth*, key issues were thoroughly vetted through comprehensive briefing and oral argument.  (A218, 11:23–24; A292, 85:6–8.)  As a result, Plaintiff had ample opportunity to demonstrate that the allegations in the Amended Complaint

---

analysis," "Capstone opinion given to debtors at time of acquisition," and "BAML's presentation to the SR board"); SA127 (time spent reviewing "BAML materials in connection with WorkflowOne Acquisition"); SA129 (time spent reviewing "historical board minutes re: WorkflowOne acquisition and prospective Chicago transaction").)

[26] (*See* SA130–43, SA144–54.)

[27] For example, see *supra* footnote 5, highlighting language from Board minutes the Amended Complaint quotes out of context.

were sufficient.  After full briefing and argument, the Bankruptcy Court rightfully had no reason to believe that granting Plaintiff leave to replead its fiduciary duty claims would change the result.  (A288–A289, 81:23–82:1 ("I would conclude from my review, frankly, of the full briefing, as well as the argument that I've received today, that I have little reservation with respect to the breach of fiduciary duty counts.").)  Dismissal with prejudice was soundly reasoned and squarely within the Bankruptcy Court's discretion.

Plaintiff's cases, moreover, are inapposite.  In *Coventry v. U.S. Steel Corp.*, 856 F.2d 514 (3d Cir. 1988), the district court denied the plaintiff an opportunity to add a new claim, made possible only because of new decisional law, based on its inadequately explained concerns that amendment would cause undue delay and prejudice.  None of that applies here.  In *Smith v. Schwarzenegger*, 393 F. App'x 518 (9th Cir. 2010) (*per curiam*), the court reversed an order granting dismissal with prejudice of a *pro se* prisoner's first attempt to assert an Eighth Amendment claim.  Here, Plaintiff is a sophisticated representative body whose counsel had already analyzed thousands of pages of highly relevant discovery, and who already enjoyed more than one opportunity to plead a legally sufficient cause of action.

For all the reasons set forth herein, as well as the reasons set out in the Bankruptcy Court's oral ruling and SMO, there can be no doubt that Plaintiff's allegations are legally insufficient, and dismissal with prejudice was a proper

48

exercise of the Bankruptcy Court's discretion.   Accordingly, this Court should affirm.

## II.   THIS COURT SHOULD AFFIRM THE BANKRUPTCY COURT'S DISMISSAL OF THE FRAUDULENT TRANSFER CLAIMS (SECOND AND THIRD COUNTS).

### A.   The Claim for Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B) Was Correctly Dismissed.

The Bankruptcy Court correctly dismissed Plaintiff's claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B),[28] and its ruling should be affirmed.

To survive a motion to dismiss, Plaintiff "cannot merely recite the statutory elements" of a constructive fraudulent transfer claim.   *In re Circle Y*, 354 B.R. 349, 356 (Bankr. D. Del. 2006); *see also In re Global Link*, 327 B.R. 711, 718 (Bankr. D. Del. 2005).   Rather, to plausibly state a claim for constructive fraudulent transfer, a plaintiff must plausibly plead *both*: (i) that the debtor was insolvent at the time the purportedly fraudulent transfers were made or incurred, *and* (ii) that the debtor did not receive reasonably equivalent value for the transfer.   *In re Aphton Corp.*, 423 B.R. 76, 90 (Bankr. D. Del. 2010).   A failure to plausibly plead *either* element requires dismissal.   *Id.*   Contrary to Plaintiff's assertions that

---

[28] Plaintiff does not assert claims under 11 U.S.C. § 548(a)(1)(A), which requires a showing of actual fraudulent intent.   By omitting such a claim, Plaintiff has effectively conceded that it has not pleaded and cannot plead any intentional misconduct as it relates to the receipt of the transaction bonuses.

49

questions of insolvency and reasonably equivalent value cannot be resolved on a motion to dismiss, courts in Delaware routinely dispose of fraudulent transfer claims at the motion to dismiss stage. *See, e.g.*, *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 520–21 (D. Del. 2012); *Circle Y*, 354 B.R. at 356; *Global Link*, 327 B.R. at 718.

Here, Plaintiff contends that the transaction bonuses paid to Morgan and Ginnan in connection with the WorkflowOne acquisition—$900,000 and $325,000, respectively—constitute fraudulent transfers. These bonuses were approved by the Board on July 31, 2013. The first halves of these bonuses were paid immediately after the closing of the WorkflowOne acquisition on August 1, 2013, and the second halves were paid after Standard Register met certain financial benchmarks in the first quarter of 2014—more than a year before the company filed for bankruptcy.

The Bankruptcy Court dismissed Plaintiff's constructive fraudulent transfer claim because the Complaint fails to plausibly plead **either** of the requisite elements. (*See* A292, 85:2–5 ("I'm not satisfied that the plaintiff has articulated that . . . the company failed to obtain reasonably equivalent value associated with the transactions."); *id.* 85:15–18 ("And again, I struggle to see, under these circumstances, as alleged, that the debtor was insolvent at the time of the

50

transaction, or that it was rendered insolvent.").)  This Court should affirm on either or both grounds.

### 1. Standard Register Received Reasonably Equivalent Value in Exchange for the Transaction Bonuses.

The Bankruptcy Court correctly held that Standard Register received reasonably equivalent value in exchange for the transaction bonuses.  There are at least two bases to support this holding.

*First*, bankruptcy courts "uniformly recognize that reduction of preexisting debt, dollar-for-dollar in proportion to the amount of payment, gives a reasonable equivalence to the transfer; and hence the payment is sheltered from avoidance." *In re Duke & King Acquisition Corp.*, 508 B.R. 107, 146 (Bankr. D. Minn. 2014). Thus, where a payment is made to extinguish or reduce a debt incurred prior to insolvency, and the payment reduces the debt on a dollar-for-dollar basis, the payment cannot be avoided as a fraudulent transfer because the debtor has received reasonably equivalent value for the payment.  *See* Collier on Bankruptcy ¶ 548.03[5] ("Payment of a pre-existing debt is value, and if the payment is dollar-for-dollar, full value is given.").

Here, it is undisputed that the transaction bonuses were incurred as a debt on July 31, 2013—one day *before* the WorkflowOne acquisition closed, and thus prior to the earliest point in time Plaintiff alleges the company became insolvent (immediately upon the closing of the WorkflowOne acquisition on August 1,

51

2013).   The transaction bonuses were thus a pre-existing debt to Morgan and Ginnan incurred prior to the alleged insolvency, which were subsequently paid in two installments on a dollar-for-dollar basis.   Because the transaction bonuses were a pre-existing debt subsequently paid on a dollar-for-dollar basis, they cannot be avoided and the fraudulent transfer claim fails.

   **Second**, even if the transaction bonuses do not constitute a pre-existing debt, the Amended Complaint still fails to plausibly plead that Standard Register did not receive reasonably equivalent value in exchange for the transaction bonuses. Simply put, there are no plausible allegations in the Amended Complaint that Morgan and Ginnan did not actually earn the transaction bonuses.   The first halves of the bonuses were paid upon closing of the WorkflowOne acquisition and were intended to reward Morgan and Ginnan for their work, over the course of many years, in exploring numerous mergers and strategic combinations (not just the WorkflowOne acquisition).   The second halves of the bonuses were performance-based and were paid **only after** the combined company achieved certain financial benchmarks in the first quarter of 2014.   (*See* Statement of the Case section II.E.) Indeed, the fact that the second halves of the transaction bonuses were paid to Morgan and Ginnan after the company met these benchmarks makes clear that the company received value for their work.   (*Id.*)   The Bankruptcy Court correctly dismissed the claim for failure to plausibly plead that Standard Register did not

52

receive reasonably equivalent value in exchange for the transaction bonuses. *Fedders*, 405 B.R. at 547 ("Taking all facts in the complaint as true and granting all reasonable inferences to [p]laintiff, the [c]ourt cannot conclude that the complaint successfully pleads that Fedders received less than 'reasonably equivalent value' from the Lenders . . . .").

### 2.      The Allegations that the Company Was Insolvent at the Time of the Acquisition Are Implausible.

The Bankruptcy Court properly dismissed Plaintiff's constructive fraudulent transfer claim for the separate and independent reason that the Amended Complaint fails to plausibly allege that Standard Register was insolvent at the time the transaction bonuses were paid.   Plaintiff contends that Standard Register became insolvent at the moment the WorkflowOne acquisition closed (after which the first halves of the transaction bonuses were paid).   This is implausible for at least the following reasons:

*First*, Plaintiff's theory of insolvency is only plausible if this Court accepts the proposition that the Board agreed to enter into a merger, on the advice of expert financial advisors and after many months of diligence and deliberation and many years of exploring a variety of potential mergers and strategic combinations, that immediately upon closing rendered the combined company insolvent.   This is implausible and inconsistent with the presumption under the business judgment

rule that directors will not enter into absurd transactions like the one posited by Plaintiff.

**Second**, the Amended Complaint fails to plead any facts in support of its conclusory allegation that "Debtors were left insolvent as a result of the WorkflowOne Acquisition." (A76 ¶ 87.) There are no allegations in the Amended Complaint, for example, that the company could not or did not pay its creditors at the time the transaction bonuses were paid. In fact, the Amended Complaint implicitly concedes that the company did not become insolvent until *well after* the closing of the acquisition. (*See* A78 ¶ 99 ("*Within months after the closing date of the WorkflowOne Acquisition*, it became apparent that the Debtors would breach covenants . . . .") (emphasis added); *see also* D.I. 15 (Appellant's Br.) 53 ("Additionally, within months after the closing of the Acquisition, it became apparent that Debtors would not be able to pay debts when due.").) If it became apparent only "months" after the transaction closed that the company would breach covenants, then the company was not insolvent at the time the transaction bonuses were paid (immediately after the closing of the WorkflowOne acquisition and in the first quarter of 2014). And if the company was not insolvent at the time the transaction bonuses were paid, then the fraudulent transfer claim must fail. *In re Crucible Materials Corp.*, No. 09-11582(MFW), 2012 WL 5360945, at *7 (Bankr. D. Del. Oct. 31, 2012) (dismissing fraudulent transfer claim where complaint

54

lacked "actual facts to support contention that Crucible was insolvent at the time the payments were made").

**Third**, Plaintiff's theory of insolvency would require this Court to ignore that the Board obtained a solvency opinion from Capstone, which concluded that the combined company would remain solvent upon the closing of the merger. (*See* Statement of the Case section II.C.)  This solvency opinion directly contradicts Plaintiff's conclusory allegations of insolvency.

**Fourth**, the company's stock price soared approximately 360% when the acquisition was announced, and continued to trade at pre-merger levels for at least a year.  (*See* Statement of the Case section II.D.)  Bankruptcy courts have made clear that "[a] company's stock price is an 'ideal datapoint' for determining value . . . [because] market evidence [is] . . . 'untainted by hindsight or post-hoc litigation interests.'"  *In re Iridium Operating LLC*, 373 B.R. 283, 346 (Bankr. S.D.N.Y. 2007).  The Bankruptcy Court correctly noted that "when courts look to see what people with skin in the game, with actual market-based information do, we can look to that as an indicator of value . . . . [T]he trading price of a security or a debt instrument is, indeed, meaningful evidence of value and relevant to the solvency analysis."  (A292–A293, 85:23–86:8.)  Here, the fact that investors (acting at the time, and not with the benefit of 20/20 hindsight) bullishly supported the company's stock for more than a year after the merger closed plainly undermines

Plaintiff's allegations that the company was insolvent at the time the merger closed.

**Fifth**, and finally, Plaintiff spends much of its brief arguing that the debts assumed by Standard Register after the merger exceeded "the fair value" of the company's assets; but Plaintiff fails to point out that the "valuation" of the company's assets upon which it relies was conducted by Silver Point—the same entity which previously served as a defendant in this action and has already made a settlement payment to Plaintiff.  Plaintiff offers no reason as to why this self-interested valuation by Silver Point should plausibly trump (i) the Board's contemporaneous determination that the acquisition was accretive for the company; (ii) the expert opinion from Capstone stating that the company was solvent at the time of the transaction; and (iii) the contemporaneous reaction of investors, which caused the company's stock price to soar 360% upon consummation of the merger.

### 3. The Amended Complaint Fails to Allege Any Other Basis for the Constructive Fraudulent Transfer Claim.

Plaintiff fails to allege any other plausible basis for asserting a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B).  The Amended Complaint lacks any facts showing that either (i) "the debtor . . . intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as such debts matured," or (ii) "the debtor . . . was engaged in business or a transaction, or was

56

about to engage in . . . a transaction, for which any property remaining with the debtor was unreasonably small capital." 11 U.S.C. § 548(a)(1)(B)(ii). The Amended Complaint pleads no facts to show, for example, that the transaction bonuses themselves (which, combined, were a modest $1.225 million, if fully paid) jeopardized the company's ability to pay its debts. Nor does the Amended Complaint plausibly allege that the relatively small transaction bonuses depleted the company's capital to an unreasonably small level. This court should therefore affirm the dismissal of the constructive fraudulent transfer claim.[29]

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order dismissing the Amended Complaint should be affirmed in its entirety.

Dated: July 12, 2016
        Wilmington, DE

---

[29] Plaintiff correctly notes in its brief that its claim for fraudulent transfer under the Ohio Uniform Fraudulent Transfer Act ("UFTA") is "substantially similar" to the claim asserted under the federal bankruptcy code. (D.I. 15 (Appellant's Br.) 48 n.20.) Because Plaintiff's claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) fails, its claim under the UFTA also fails. *See, e.g.*, *In re Gavin*, No. 08-60881, 2011 Bankr. LEXIS 2613, at *8 (Bankr. S.D. Ohio July 11, 2011).

*/s/   Matthew B. Harvey*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney
David J. Teklits
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: (302) 658-9200
Fax: (302) 658-3989

*Counsel for Appellees*


**MORRISON & FOERSTER LLP**
James Michael Peck*
Carl H. Loewenson, Jr.*
Robert J. Baehr*
250 West 55th Street
New York, New York 10019
Tel: (212) 468-8000

James M. Koukios*
Lauren A. Navarro*
2000 Pennsylvania Avenue NW, Suite 6000
Washington, D.C. 20006
Tel: (202) 887-1500

*Counsel for Roy W Begley, Jr., F. David Clarke, III, John Q. Sherman, II, Julie D. Klapstein, John J. Schiff, Jr., and R. Eric McCarthey*

**JONES DAY**
Jeffrey J. Jones*
Charles M. Oellermann*
Marjorie P. Duffy*
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215
Tel: (614) 469-3939

*Counsel for Robert M. Ginnan*


**SQUIRE PATTON BOGGS (US) LLP**
Joseph C. Weinstein*
Sean L. McGrane*
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500

*Counsel for Joseph P. Morgan, Jr.*

---

* *Pro hac* admission pending.

58

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 8015(a)(7)(C) of the Federal Rules of Bankruptcy Procedure, I hereby certify that:

1.     This brief complies with Rule 8015(a)(7)(B) of the Federal Rules of Bankruptcy Procedure, made applicable by Rule 8015(f), because it contains 13,562 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted from that count.

2.     This brief complies with the typeface requirements of Rule 8015(a)(5) of the Federal Rules of Bankruptcy Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated: July 12, 2016

*/s/  Robert J. Baehr, Esq.*
  Robert J. Baehr, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Harvey, certify that I am not less than 18 years of age, and that service of the foregoing **Appellees' Brief In Opposition To Appeal From The Order Dismissing The Amended Adversary Complaint** was caused to be made on July 12, 2016, on the following counsel of record by electronic mail:

Christopher A. Ward
Justin K. Edelson
Polsinelli PC
222 Delaware Avenue
Suite 1101
Wilmington, DE 19801
cward@polsinelli.com
jedelson@polsinelli.com

Kenneth A. Rosen, Esq.
Sharon L. Levine, Esq.
Paul Kizel, Esq.
Wojciech F. Jung, Esq.
Andrew Behlmann, Esq.
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, NJ 07068
krosen@lowenstein.com
slevine@lowenstein.com
pkizel@lowenstein.com
wjung@lowenstein.com
abehlmann@lowenstein.com

Gerald C. Bender, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
gbender@lowenstein.com

Date: July 12, 2016
Wilmington, Delaware

_____*/s/ Matthew B. Harvey*_____
Matthew B. Harvey (No. 5186)