IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: SRC LIQUIDATION LLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 15-10541-BLS |
| Debtors. | : | (Jointly Administered) |
| | : | |
| EISERAMPER LLP, not in its individual capacity | : | Adv. Proc. No. 15-50771-BLS |
| but as Trustee of SRC LIQUIDATING GUC TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 16-119-LPS |
| | : | |
| JOSEPH P. MORGAN, JR., ROY W. BEGLEY, JR., | : | |
| F. DAVID CLARKE, III, JOHN Q. SHERMAN, II, | : | |
| JULIE D. KLAPSTEIN, JOHN J. SCHIFF, JR., | : | |
| ROBERT M. GINNAN, R. ERIC MCCARTHEY, | : | |
| JOHN DOES 1-10, AND XYZ COMPANIES 1-10, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

EiserAmper LLP ("Plaintiff"), as trustee of the SRC Liquidating GUC Trust ("Trust")

created in the Chapter 11 cases of The Standard Register Company and its affiliates ("Debtors"),

appeals the Bankruptcy Court's dismissal of an adversary proceeding against Robert M. Ginnan,

Joseph P. Morgan, Jr. ("Officer Defendants"), Roy W. Begley Jr., F. David Clarke, III, John Q.

Sherman, II, Julie D. Klapstein, John J. Schiff, Jr., and R. Eric McCarthey ("Director

Defendants"), asserting causes of action including breach of fiduciary duty and avoidance of

fraudulent transfers. The appeal is fully briefed. (*See* D.I. 15, 20, 36) For the reasons stated

below, the Court will affirm the dismissal.

## I.    BACKGROUND

Facing economic difficulties, including a decline in the demand for traditional printing

services and underfunded pension obligations, The Standard Register Company and its

subsidiaries (the "Company") pursued restructuring and ultimately entered into a strategic

combination transaction to acquire a competitor, WorkflowOne (the "Acquisition"). In connection with the Acquisition, Officer Defendants prepared financial projections regarding the combined companies to determine whether the Acquisition made sense. (A62 ¶ 18)[1] On July 31, 2013, the Company's board approved the Acquisition, along with transaction bonuses totaling $900,000 for Morgan and $325,000 for Ginnan.[2] (A69 ¶¶ 54, 55) Half of each bonus was contingent on the Company attaining "certain performance-related thresholds" in the "first quarter of 2014." (*See* SA48) Having met those thresholds, Officer Defendants later received the full amount of the bonuses. (*See* A69 ¶¶ 54-55) Ultimately, the synergies and growth that management had projected for the combined companies were not achieved. (*See* D.I. 20 at 15) The Company defaulted on its debt and, on March 15, 2015, filed for relief under Chapter 11 of the Bankruptcy Code. In May 2015, the Bankruptcy Court granted the creditors' committee standing to pursue causes of action on behalf of the estates. The creditors' committee filed a complaint focused on its secured lenders, including Silver Point Capital L.P. ("Silver Point") and, within weeks, reached a $5 million settlement with those parties. (B.D.I. 696) Following the settlement, Plaintiff amended the complaint (Adv. D.I. 6) ("Complaint") which now focuses on Defendants' decision to pursue the Acquisition as the alleged cause of the Company's eventual bankruptcy.

The purported unreliability of the projections presented to the board in connection with

---

[1] The docket of the Chapter 11 cases, *In re SRC Liquidation, et al.*, Case No. 15-10541-BLS (Bankr. D. Del.), is referred to herein as "B.D.I. __." The docket of the adversary proceeding, *EiserAmper LLP v. Joseph P. Morgan, et al.*, Adv. Pro. No. 15-50771-BLS (Bankr. D. Del.), is referred to herein as "Adv. D.I. __." Citations to "A ___" refer to Appellant's Appendix (D.I. 16). Citations to "SA __" refer to Appellees' Supplemental Appendix (D.I. 21).

[2] The Board also approved equity grants of performance-related restricted stock and time-vested restricted stock, neither of which are the subject of the adversary proceeding. (*See* SA48) The latter would fully vest in 2016 and the former would vest "based on the achievement of certain performance goals over three years." (*See* SA48-49)

the Acquisition is the basis of Plaintiff's breach of fiduciary duty claim. (*See* A154 (Plaintiff describing projections as "the linchpin" of its claims)) Count I of the Complaint alleges that Defendants breached their fiduciary duties under Ohio law[3] by approving the Acquisition without fully and adequately informing themselves, and by relying on unrealistic and overly optimistic projections which they knew or should have known the Company could not achieve following the Acquisition, and (ii) the Officer Defendants breached their fiduciary duty by knowingly preparing unreliable and unattainable financial projections. Count I further alleges that Defendants breached their duty of loyalty by approving the Acquisition to preserve their positions and their compensation.

Count II of the Complaint seeks avoidance of the bonuses paid to the Officer Defendants as constructively fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code. Count III seeks avoidance of the bonuses to the Officer Defendants as fraudulent transfers pursuant to § 544 of the Bankruptcy Code – which permits a bankruptcy trustee to bring a claim for fraudulent transfer under applicable state laws – and the Ohio Uniform Fraudulent Transfer Act, codified at Ohio Revised Code § 1336.01 *et seq*. Count IV seeks the disallowance of Defendants' claims against the estates in accordance with § 502(d) of the Bankruptcy Code.[4]

Defendants moved to dismiss the Complaint. (Adv. D.I. 19) On February 8, 2016, the Bankruptcy Court conducted a hearing on the motion to dismiss and ruled from the bench,

---

[3] Debtor SRC Liquidation Company acquired WorkflowOne and was an Ohio corporation at all times relevant to the Complaint. There is no dispute between the parties that, under the internal affairs doctrine, Plaintiff's claims for breaches of fiduciary duty are governed by Ohio law. *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009) (stating authority to regulate corporation's internal affairs belongs to state under which corporation is chartered).

[4] Section 502(d) of the Bankruptcy Code provides, *inter alia*, that the court shall disallow any claim of any entity from which property is avoidable under § 548 (as a fraudulent transfer) unless such entity or transferee has paid the amount, or turned over any such property, for which such entity is liable. *See* 11 U.S.C. § 502(d).

3

dismissing Count I with prejudice, and dismissing Counts II, III, and IV without prejudice. On February 19, 2016, the Bankruptcy Court entered an order dismissing the Complaint for the reasons stated at the hearing and granting Plaintiff leave to amend Counts II-IV within 30 days. (Adv. D.I. 53; A302-03) (the "Dismissal Order") Rather than amend, Plaintiff filed a notice of appeal on March 1, 2016. (D.I. 1) The Bankruptcy Court then issued a Supplemental Memorandum Order further discussing its dismissal of Count I with prejudice. (Adv. D.I. 61; A304-12) ("Memorandum Order") Addressing its dismissal of Count I with prejudice, the Bankruptcy Court determined that the Complaint failed to plausibly allege any facts – as opposed to general conclusions – demonstrating that the projections were in fact "unrealistic and overly optimistic" or that Defendants knew or should have known this at the time (*see* A307-08); failed to plausibly allege entrenchment or lack of disinterestedness to support the alleged breach of loyalty (*see* A309-11); and failed to plausibly allege facts demonstrating that any breach of fiduciary duty was the proximate cause of the bankruptcy and any resulting damages (*see* A311).

## II.     APPELLANT'S CONTENTIONS

Plaintiff raises several issues on appeal, but its main argument is that dismissal of any of the Counts was improper because the Bankruptcy Court failed to accept all factual allegations in the Complaint as true and failed to draw all reasonable inferences in favor of Plaintiff. (*See* D.I. 15 at 16-19) According to Plaintiff, the Bankruptcy Court also improperly subjected Plaintiff to a "heightened pleading standard" based on Plaintiff's access to discovery produced to the creditors' committee in the course of the Chapter 11 cases. (*See id.* at 19-23)

With respect to the breach of fiduciary duty claim, Plaintiff argues that the Bankruptcy Court erred in granting the motion to dismiss because the Complaint plead sufficient facts to overcome Ohio's business judgment rule. (*See id.* at 27-32) According to Plaintiff, the Complaint plausibly alleges facts demonstrating that, in light of their knowledge of the ongoing

4

declines in the print industry, Defendants breached their duty of care by preparing and accepting projections which they knew or should have known were unrealistic and unattainable. (*See id.*) Plaintiff further argues that the Complaint plausibly alleges facts demonstrating that Defendants were motivated to prepare unrealistic projections in order to retain their corporate control and equity interests, lacked disinterestedness in the Acquisition by virtue of the possible bonuses, and therefore breached their duty of loyalty. (*See id.* at 37-41) With respect to causation, Plaintiff contends that the Complaint plausibly alleges facts from which the Bankruptcy Court could infer that Defendants' actions preparing and accepting unrealistic projections caused the Company to severely overpay for the Acquisition, burdened it with overwhelming secured debt and highly restrictive covenants it could not support, and was therefore the proximate cause of the bankruptcy and resulting damages. (*See id.* at 41-45) Plaintiff further contends that dismissal of the fiduciary duty claim with prejudice was an abuse of discretion because the Bankruptcy Court did not explain its reasoning. (*See id.* at 45-47)

Regarding the fraudulent transfer claims, Plaintiff argues that the Complaint contained sufficient factual allegations to demonstrate that Debtors were insolvent or rendered insolvent at the time they paid the bonuses and that a strong stock price at the time of the Acquisition cannot rebut a claim of insolvency at the pleading stage. (*See id.* at 49-53) Plaintiff further argues that the Complaint contained sufficient allegations to plausibly state that Debtors did not receive reasonably equivalent value for the transaction-related bonuses because "the board effectively destroyed the Debtors' prospect of remaining in business by overpaying for the Acquisition" and thus "[i]t would belie all common sense to find that the Debtors received reasonably equivalent value" for any bonuses paid in connection with the Acquisition. (*See id.* at 54-58)

## III.   LEGAL STANDARDS

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158.

5

Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). Whether a party sufficiently states a claim is a question of law, over which this court exercises *de novo* review. *See Mayer v. Belichick,* 605 F.3d 223, 229 (3d Cir. 2010).

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Id.*

However, to survive a motion to dismiss, Plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of Plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted). The Court is not obligated to accept as true "bald

6

assertions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (internal

quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill*

*Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir. 1997), or

allegations that are "self-evidently false," *Nami v. Fauver,* 82 F.3d 63, 69 (3d Cir. 1996).

This Court reviews the Bankruptcy Court's decision to dismiss Count I of the Complaint

with prejudice – that is, without a further opportunity for amendment – for abuse of discretion.

*See Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413 (3d Cir. 1993). An abuse of discretion exists if the

Bankruptcy Court's ruling "rests upon a clearly erroneous finding of fact, an errant conclusion of

law, or an improper application of law to fact." *In re SGL Carbon Corp.,* 200 F.3d 154, 159 (3d

Cir. 1999).

## IV. DISCUSSION

### A. Pleading Standard

As an initial matter, Plaintiff argues that the Bankruptcy Court erred by improperly

subjecting Plaintiff to a "heightened pleading standard" in light of discovery produced during the

Chapter 11 cases. (*See* D.I. 15 at 19-23) In the motion to dismiss, Defendants asserted that the

Complaint failed to identify any facts demonstrating a flaw in the projections, and that this

failure was "telling" because the creditors' committee "had the benefit of thousands of pages in

discovery when it drafted its Amended Complaint" (A107), including the projections (A105),

minutes of the board meetings at which the projections were presented and discussed (*id.*), sworn

declarations from Morgan and Ginnan (B.D.I. 586, 588) detailing how the projections were

prepared and presented to the board (A107), and certain advisory opinions obtained by the

Company prior to the Acquisition (A107-08).[5] What consideration, if any, the Bankruptcy Court

---

[5] In connection with the Acquisition, (i) Bank of America Merrill Lynch, the Company's
investment banker, provided a fairness opinion, and (ii) Capstone Valuation Services provided a
solvency opinion. (*See* D.I. 15 at 33 n.14) Plaintiff argues on appeal that any consideration by

should give to Defendants' assertions, in light of the fact that Rule 9(b)'s standard is sometimes relaxed at the pleading stage for bankruptcy trustees, was discussed at the hearing on the motion to dismiss. (*See* A280 at 73:18-22) According to Plaintiff, the limited discovery received by the creditors' committee was focused primarily on relief sought by the Debtors in connection with post-petition financing and sale efforts and was reviewed in a compressed time frame. (D.I. 15 at 20) On appeal Plaintiff argues that "[t]he fact that pleading standards are typically relaxed for trustees who may not have access to evidence to support [their] claim at the pleading stage, does not imply that there ought to be a *heightened* pleading standard for trustees whose attorneys had some access." (*Id.* at 22-23) Defendants respond that the Bankruptcy Court correctly applied the *Twombly-Iqbal* standard in determining whether the Complaint contained sufficient factual allegations and did not apply a heightened standard. (D.I. 20 at 3-4)

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a plaintiff's allegations involve claims of fraud,[6] the plaintiff must also meet the threshold pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

---

the Bankruptcy Court of the advisory opinions was improper because they were not referenced in the Complaint and because they assumed and relied on the flawed projections without independent review or validation. (*See id.* at 33-34) The Court finds no indication that the Bankruptcy Court gave any consideration to the advisory opinions in determining that the allegations in the Complaint were insufficient to state a claim. The colloquy regarding whether "less deference" should be given where "projections are not prepared by third parties or scrubbed by independent professionals" does not support finding the error alleged by Plaintiff. (*See id.* at 33 n.15 (citing A237-38, 30-31))

[6] The Bankruptcy Court has held that the Rule 9(b) pleading standard applies to a fraudulent transfer claim under § 548, regardless of whether it is based on actual or constructive fraud. *See In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D. Del. 2005); *see also In re Fruehauf Trailer Corp.,* 444 F.3d 203, 210 (3d Cir. 2006) (addressing fraud in context of sections 548(a)(1)(A) and (a)(1)(B) of Bankruptcy Code).

8

constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is a heightened pleading standard intended "to protect a defendant from the burdens of discovery associated with a fraud claim." *In re Liberty State Benefits of Delaware*, 541 B.R. 219, 233 (Bankr. D. Del. 2015). Courts sometimes relax the heightened standard for bankruptcy trustees bringing fraud claims on behalf of a debtor and its creditors where the trustee has not been afforded any discovery prior to filing a complaint.[7]

Defendants correctly explain that all claims – whether brought by a bankruptcy trustee or not – are subject, at a minimum, to the *Twombly-Iqbal* standard, and applying that standard to a bankruptcy trustee's claims does not impose a "heightened pleading standard." (D.I. 20 at 3-4) The Court finds no indication in the hearing transcript, Dismissal Order, or Memorandum Order that the Bankruptcy Court applied any heightened pleading standard in dismissing the Complaint. The record merely reflects that, based on Defendants' repeated statements that Plaintiff had the benefit of discovery, the Bankruptcy Court sought to clarify Defendants' position during oral argument as to whether some different pleading standard should apply:

> Case [l]aw supports the proposition that there is a lower threshold
> for [a] Trustee to meet, recognizing that they don't necessarily
> have all the institutional knowledge. . . . I've wondered whether or
> not [Defendants are], sort of, imposing the flip side of that coin
> where you've got a Liquidating Trustee that is the successor,
> effectively, to a Committee that had all the benefits of Discovery
> Rule 2004 . . . .

(A214, 7:16-7:25) In seeking clarification from Defendants, the Bankruptcy Court inquired whether the analysis should be "pretty strict where we have players that have, frankly, all of the

---

[7] *See e.g., Liberty*, 541 B.R. at 233 (applying slightly relaxed standard to bankruptcy trustee's RICO claims involving fraud); *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R.747, 753 (Bankr. D. Del. 2007) ("A bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud."). Generally, as a third party outsider, a trustee must "rely on secondhand knowledge for the benefit of the estate and all of its creditors." *In re Global Link Telecom Corp.*, 327 B.R. 711, 717 (Bankr. D. Del. 2005).

financial records of the company or had access to much more than [the court] would see in a Chapter 7 case." (*See* A257, 50) While Defendants agreed to the characterization of the argument (*see* A257, 50), and Plaintiff makes much of this exchange on appeal, the Court finds no indication that the Bankruptcy Court "appeared to erroneously accept Defendants' argument" that the Complaint was subject to a heightened pleading standard in light of the discovery that was provided, as Plaintiff has asserted on appeal (D.I. 15 at 19), or that the Bankruptcy Court applied any standard other than *Twombly-Iqbal* in determining that dismissal was appropriate. Rather, the transcript reflects the Bankruptcy Court's agreement that a bankruptcy trustee is generally afforded greater pleading liberality. (*See* A256-57, 49:23-50:1 ("It is a well settled proposition that a Bankruptcy Trustee, typically, receives more deference at the Rule 12 stage . . .")) The Court finds no merit in the argument that the Bankruptcy Court applied a heightened pleading standard.

## B. Breach of Fiduciary Duty (Count I)

Directors of Ohio corporations owe the corporation a duty of care and a duty of loyalty, duties which are codified in the Ohio Revised Code. "[U]nder the duty of care, a director must perform his duties 'with the care that an ordinary prudent person in a like position would use under similar circumstances,'" while "under the duty of loyalty a 'director shall perform his duties as a director . . . in good faith, in a manner he reasonably believes to be in [or not opposed to] the best interests of the corporation.'" *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985) (quoting Ohio Rev. Code § 1701.59(B)). Ohio's business judgment rule creates a presumption that fiduciaries have acted with care, in the best interests of the company, and in good faith. *See* Ohio Rev. Code § 1701.59(D)(1) ("A director shall not be found to have violated the director's duties . . . unless it is proved by clear and convincing evidence that the director has not acted in good faith, in a manner the director reasonably believes to be in or not opposed to the best

interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances . . ."); *Brosz v. Fishman*, 99 F. Supp. 3d 776, 785 (S.D. Ohio 2015) (noting presumption under Ohio law "that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation.").

"The decisions of disinterested [fiduciaries] will not be disturbed if they can be attributed to any rational business purpose." *Koos v. Cent. Ohio Cellular*, 641 N.E.2d 265, 273 (Ohio Ct. App. 1994)). "Ohio courts adhere to the 'business judgment rule,' and will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith or abuse of discretion." *Id.* at 272 (quoting *Radol*, 772 F.2d at 256). A plaintiff asserting liability for damages based on breach of fiduciary duty must show by clear and convincing evidence "that the director's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation." Ohio Rev. Code § 1701.59(E).

### 1. Duty of Care

Under Ohio law, "[p]laintiffs must plead facts, as distinct from generalized conclusions, which, if proved, would overcome the presumption that the [director defendants] have acted in good faith and in the best interests of the corporation." *In re Gas Natural, Inc.,* 2015 WL 3557207, at *15 (N.D. Ohio June 4, 2015) (internal citation omitted). Here, the crux of Plaintiff's duty of care claim is that Defendants "knew or should have known" that the projections were "unrealistic and overly optimistic." (A79-80 ¶¶ 111, 113-14) However, the Ohio Revised Code expressly insulates Ohio directors from liability when they rely on information prepared by management, other directors, and outside experts, accountants, or consultants:

> In performing a director's duties, a director is entitled to rely on
> information, opinions, reports, or statements, including financial

11

> statements and other financial data, that are prepared or presented by . . . directors, officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented . . . .

Ohio Rev. Code § 1701.59(C). The fiduciary will be considered to be acting in bad faith only if he "has knowledge concerning the matter in question that would cause reliance on [such] information, opinions, reports, or statements . . . to be unwarranted." *Id.* § 1701.59(D)(2). Thus, pursuant to § 1701.59(C) and (D)(2), Defendants' reliance on the projections is insulated from liability unless Plaintiff pleads factual allegations tending to show Defendants did not reasonably believe management was competent to prepare the projections or had knowledge that caused their reliance on the projections to be unwarranted. *See id.*; *see also Goodyear*, 2007 WL 43557, at *9 (rejecting plaintiff's argument that defendants' reliance on § 1701.59(D) was inappropriate at pleading stage).

The Bankruptcy Court carefully considered Ohio's statute in determining whether Plaintiff plead facts sufficient to overcome the business judgment presumption. The Bankruptcy Court determined that the Complaint failed to plausibly allege that Defendants "had personal knowledge of facts that would have called into question the capability or integrity of company management that prepared the financial projections and endorsed the proposed transaction." (A307-08) The Bankruptcy Court further determined that "the [Complaint] offers only conclusory statements that the directors had actual knowledge of any methodological problems with the projections when they were considering the [Acquisition], but alleges no facts in support thereof." (A307)

On appeal, Plaintiff argues that the Bankruptcy Court failed to accept well-pleaded factual allegations in the Complaint that the projections were unrealistic and unattainable and Defendants are, thus, not entitled to the protection afforded by the business judgment rule. (*See* D.I. 15 at 27-32) Plaintiff further argues that the Bankruptcy Court misinterpreted

12

§ 1701.59(D)(2) when it held that the Complaint did not plausibly allege that Defendants had "actual knowledge" of the projections' alleged deficiencies. Plaintiff contends that "[n]othing in section 1701.59(D)(2) requires 'actual knowledge' of problems with the methodology of projections in order to demonstrate that a director has acted in bad faith," and the Complaint contained sufficient allegations that Defendants knew or "ought to have known" that reliance was unwarranted, which courts have construed as sufficient to rebut the presumption of the business judgment rule. (*Id.* at 28 (citing cases))

Defendants counter that Count I was properly dismissed because the Complaint contains no factual allegations which, taken as true, would overcome the presumption that Defendants prepared, considered, and relied on the projections in good faith. (*See* D.I. 20 at 26-27) According to Defendants, Plaintiff's contention that the projections were unrealistic and overly optimistic is not supported by any alleged material error in the methodology used to generate the projections, or by any factual allegation that, if proven, would establish that Defendants were aware or should have been aware of any such error or facts that would call into question the assumptions regarding the potential benefits of the Acquisition (*e.g.*, cost synergies and expanded customer bases) which were used in making the projections. (*See id.* at 30) Defendants further assert that because the Bankruptcy Court determined that ***none*** of the factual allegations in the Complaint would undercut the integrity of the projections, the issue of whether the Defendants knew or should have known those facts is of no moment to the Bankruptcy Court's holding. (*See id.*)

The Complaint alleges the following facts in support of Plaintiff's claim that Defendants knew or should have known the projections were unrealistic such that reliance on them was unwarranted, and that Defendants, in nonetheless relying on them, acted with either deliberate intent or with reckless disregard for the Company's best interests:

13

- At the time of the Acquisition, WorkflowOne was worth significantly and materially less than the $218 million purchase price (A71 ¶ 62; A75 ¶ 81)

- At the time of the Acquisition, the Company was facing "industry declines" and "secular headwinds" (A72 ¶ 68; A73 ¶ 70; A77 ¶ 91; D.I. 15 at 31-32)

- At the time of the Acquisition, analysts forecasted a decline in average EBITDA margin in the print industry from 2012-2015 (A70 ¶ 60)

- In the year prior to the Acquisition, the Company cut SG&A expenditures and lost revenue, "but the projections nonetheless 'contemplated a 2.0% growth despite a 12.7% decline in SG&A expenditures' and '[t]hrough 2016, the projections contemplated that the combined company would generate market-leading revenue gains while simultaneously slashing SG&A expenditures by 17%'" (D.I. 15 at 31-32) (citing A70 ¶ 58)

Even viewing these allegations in the light most favorable to Plaintiff, they are not sufficient to demonstrate that Defendants knew or should have known that reliance on the projections was unwarranted or that they acted in bad faith. The duty of care claim is predicated on Plaintiff's contention that Defendants "turned a blind eye to relevant market trends and analysis" and "blindly relied on the projections" that Defendants "knew or should have known" "were patently unreasonable" based on "their own knowledge of the industry." (D.I. 36 at 13-14) However, the Complaint merely states these conclusory allegations without alleging supporting facts.[8] While Plaintiff now argues that the board acted intentionally or with reckless disregard because the board meeting minutes were "devoid of any evidence of significant deliberation" in connection with the projections and approval of the Acquisition (D.I. 36 at 14), the Complaint does not mention the board minutes. The Complaint does allege that Silver Point believed that WorkflowOne was worth less than the final $218 million price the Company paid, yet the Complaint does not allege that Defendants or anyone from the Company had knowledge of Silver Point's internal valuation of WorkflowOne. (A74 ¶¶ 75-79) As the Bankruptcy Court

---

[8] *See e.g.,* A69-70 ¶¶ 56-59; A73 ¶ 70; A69 ¶ 56.

14

correctly determined, these statements are not "meaningful allegations what would undercut the integrity of the projections sufficient to render the directors' decision to rely upon those projections as wrong or as sufficient predicate to assert liability against them." (A290, 83)

The Court also rejects Plaintiff's argument that the Bankruptcy Court misinterpreted § 1701.59(D)(2) when it held that the Complaint did not plausibly allege that Defendants had "actual knowledge" of the projections' alleged deficiencies. Plaintiff cites non-Ohio cases holding that directors act in bad faith when they "should have known" their decisions were flawed, even in the absence of actual knowledge.[9] Here, however, none of the allegations in the Complaint "would undercut the integrity of the projections," so Plaintiff has failed to adequately allege even that Defendants "should have known" of the purported deficiencies of the projections. Thus, while the Court does not believe the Bankruptcy Court relied on the absence of an allegation of "actual knowledge," such an error here would not be reversible, as the Complaint does not meet even the "should have known" standard. (*See* D.I. 20 at 31)[10]

The allegations in the Complaint establish that Plaintiff's fiduciary duty claim is based on hindsight. "[A] court will not second-guess the fiduciary's decision as long as it has any rational

---

[9] In each such case cited by Plaintiff, the operative complaint also contained other allegations giving rise to a plausible contention that defendants did not act in good faith. *See DCG & T ex rel. Battaglia/Ira Knight*, 68 F. Supp. 3d 579, 587-88 (E.D. Va. 2014) (also alleging self-dealing and intentional favoring of insiders); *F.D.I.C. v. Faigin*, 2013 WL 3389490, at *1, 6 (C.D. Cal. July 8, 2013) (also alleging specific errors with respect to each challenged transaction); *In re LandAmerica Fin. Grp., Inc.*, 470 B.R. 759, 776, 791-92 (Bankr. E.D. Va. 2012) (also alleging numerous facts known to directors about company's liquidity issues, including allegation that directors failed to meet or discuss those issues for extended period).

[10] The Bankruptcy Court referred to Defendants' "actual knowledge" not in the context of construing Ohio's business judgment statute, but rather in the context of addressing the Complaint's overall theory that Defendants 'knew or should have known' that the projections were unrealistic and overly optimistic. (A307-08 ¶¶ 4-5) The pertinent statute – Ohio Rev. Code § 1709.59(D)(2) – also refers to directors being entitled to rely on reports unless they have "*knowledge* . . . that would cause reliance on [such] information, opinions, reports, or statements . . . to be unwarranted" (emphasis added).

15

business purpose, even if the decision ends up being flawed in hindsight." *In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749, 761 (D. Del. Feb. 23, 2016). In the face of a declining industry, Standard Register projected that a combination with a competitor could result in significant synergies that would reduce the combined companies' costs and potentially increase profit margins. This turned out to be incorrect – which is unfortunate, but is also insufficient to establish a claim of bad faith that would lead to liability. *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 95-96 (Bankr. D. Del. 2005) ("Predicting the operating performance of the [acquired] assets was an exercise of business judgment . . . ."), *aff'd* 2006 WL 2842462 (D. Del. Oct. 2, 2006). "The business judgment rule recognizes that many important corporate decisions are made under conditions of uncertainty, and it prevents courts from imposing liability on the basis of ex post judicial hindsight and lowers the volume of costly litigation challenging directorial actions." *Radol*, 772 F.2d at 257.

### 2. Duty of Loyalty

The Complaint separately alleges in Count I that Defendants sought to preserve their "positions of control" – to entrench themselves – and that Officer Defendants were improperly motivated by the bonuses. (*See* A80 ¶¶ 115) The Bankruptcy Court determined that the Complaint plead no facts to plausibly establish an entrenchment motive based on the bonuses and compensation. (*See* A309-11)

On appeal, Plaintiff argues that the Bankruptcy Court erred because the Complaint alleges that: (i) "Defendants ensured that Standard Register's senior management (some of whom were descendants of Standard Register's founders) would remain in place and retain their equity holdings" (A68 ¶ 51); and (ii) Defendants were not disinterested in the Acquisition as they stood to benefit in a manner different from all stockholders generally through their maintenance of positions of senior officer positions and receipt of significant bonuses and other incentive

16

compensation (A69-A70 ¶¶ 52-55; A80 ¶ 115).

A successful claim for entrenchment "requires plaintiffs to prove that the defendant directors engaged in action which had the effect of protecting their tenure and that the action was motivated *primarily or solely* for the purpose of achieving that effect." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 186 (Del. Ch. 2005) *aff'd* 906 A.2d 114 (Del. 2006) (internal citations omitted). Ohio law provides that "directors are not deemed self-interested merely by virtue of the fact that the subject matter upon which they are acting may or may not result in a loss of their offices as directors or because a change or potential change in control is involved." Ohio Rev. Code § 1701.60, Committee Note (1986). Thus, to state a claim that Defendants acted disloyally, Plaintiff is required to plead "in addition to a motive to retain corporate control, other facts sufficient to state a cognizable claim that the Director Defendants acted disloyally." *Gautler v. Stephens*, 965 A.2d 695, 707 (Del. 2009). That Defendants held equity in the Company is insufficient. *See Koos*, 641 N.E.2d at 272 (observing that directors' stock ownership "is not sufficient to deprive their decision of the benefit of the business judgment rule").

The Complaint merely alleges that Defendants acted to ensure that the Company's management would remain in place and would retain their equity holdings. (*See* A68 ¶ 51) The Complaint falls short of alleging that Defendants acted primarily or solely to entrench themselves. As the Bankruptcy Court observed, allegations that a transaction permitted a defendant to remain employed and receive compensation are insufficient to plausibly allege disloyal conduct; the standard is "much higher." (A291, 84) The only additional allegations to support Plaintiff's theory are references to "negotiations regarding a prospective acquisition of Standard Register by a larger competitor." (A310 ¶ 8 (reciting allegation from Complaint); D.I. 15 at 21 (referencing negotiations with competitor that "reached an advanced stage, but suddenly came to a halt")) As the Bankruptcy Court observed, however, the Complaint does not allege

17

that this competitor ever offered to purchase the Company. (*See* A310 ¶ 8 ("With no offer to be acquired alleged to have even been made, let alone rejected, the [Complaint] fails to allege facts from which it can be plausibly inferred that [Defendants] . . . supported or approved the [Acquisition] in order to maintain their positions of control.")) The Court agrees that Plaintiff has alleged "no facts that [Defendants] chose the Acquisition over an alternative option that, if chosen instead, would have resulted in their losing their positions." (*Id.*) The Court finds no error in the Bankruptcy Court's conclusion that Plaintiff failed to plead facts sufficient to plausibly allege entrenchment.

Plaintiff also alleges a breach of the duty of loyalty based on Defendants' lack of disinterestedness. In this regard, the Complaint alleges that Defendants were not disinterested in the Acquisition as they stood to benefit in a manner different from all stockholders generally, through receipt of significant bonuses and other incentive compensation. (A69-70 ¶¶ 52-55; A80 ¶ 115) The Bankruptcy Court determined that the Complaint contained mere conclusory statements that Defendants elevated their own personal interests above those of the Company. (*See* A310-11) Plaintiff argues on appeal that this was error because the Complaint sufficiently alleged that the total compensation packages for Morgan and Ginnan – including their bonuses – "more than double[d] in 2013 as compared to 2012" (A79 ¶ 106), placing them on par with those of the CEO and CFO of a larger competitor (*id.* ¶ 107). (D.I. 15 at 37-39; D.I. 36 at 17-19)

While "[t]he protection of the business judgment rule can only be claimed by disinterested directors," Ohio courts have held that "disinterested directors" does not mean indifferent directors or directors with no stake in the outcome. *Koos*, 64 N.E.2d at 272. Rather, "[d]isinterested directors are those who neither appear on both sides of the transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Id.* at 272-73

18

(internal quotation marks omitted). The Complaint does not allege that Defendants were on both sides of the Acquisition or expected to derive financial benefit in the sense of self-dealing. The Complaint merely contains conclusory allegations that Morgan and Ginnan were improperly motivated by the bonuses, which were allegedly "outsized" in comparison to compensation received by other executives. But alleging that Defendants' total compensation packages more than doubled as compared to the prior year and that the bonuses were comparable to a larger competitor's is insufficient rebut the business judgment presumption. (*See* A69 ¶ 53; A79 ¶¶ 106-07) The Court finds no error in the Bankruptcy Court's determination that the Complaint contained mere conclusory statements that Defendants elevated their own personal interests above those of the Company to obtain certain compensation in connection with the transaction, and these conclusory allegations are insufficient to survive a motion to dismiss.[11] *See NCS Healthcare, Inc. v. Candlewood Partners, LLC*, 827 N.E.2d 797, 803 (Ohio Ct. App. 2005) (affirming dismissal where plaintiff "failed to plead any facts sufficient to avoid the presumption that the directors acted in the best interests of [the company] pursuant to the business judgment rule").

### 3. Causation

Under Ohio law, "[t]he essential elements of a claim of breach of fiduciary duty are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately therefrom." *Puhl v. U.S. Bank, N.A.*, 34 N.E.3d 530, 536 (Ohio Ct. App. 2015); *see also, Kademian v. Marger*, 20 N.E.3d 1176, 1205 (Ohio Ct. App. 2014) ("If a plaintiff establishes that a defendant breached his fiduciary duty, the plaintiff

---

[11] Based on this conclusion, the Court need not consider whether Plaintiff conceded or abandoned its lack of disinterestedness allegation based on the bonuses in the proceedings below. (*See* A163 (Plaintiff's opposition to dismissal, stating "This is not a challenge to the Board's actions in approving the [t]ransaction [b]onuses or awarding compensation generally."))

must then establish that the breach proximately caused his damages."). As a separate basis for dismissal, the Bankruptcy Court determined that the Complaint "allege[d] no facts that would establish that Standard Register's bankruptcy, and any resulting damages, were caused by Defendants' breach of fiduciary duty, rather than by market forces acting on a company in the printing and document preparation industry." (*See* A311) On appeal, Plaintiff argues that the Bankruptcy Court erred in determining that the Complaint failed to accept well-pleaded factual allegations in the Complaint regarding causation. (*See* D.I. 15 at 44-45)

While it is true, as Plaintiff argues, that proximate cause is ordinarily a question of fact that is inappropriate to resolve at this stage of the litigation, Plaintiff had the burden, under Ohio law, of pleading facts that, if proven, would establish proximate cause. *See Puhl*, 34 N.E.3d at 536; *Kademian,* 20 N.E.3d at 1205. With respect to causation, the Complaint alleges that Officer Defendants intentionally or with reckless disregard prepared, and Director Defendants blindly accepted, unrealistic projections which caused the Company to overpay for WorkflowOne and overburdened the Company with debt (A79 ¶ 111; D.I. 15 at 11); the Acquisition resulted in the bankruptcy and asset sale, which generated insufficient proceeds to satisfy the Debtors' obligations (A73 ¶ 70; A78 ¶¶ 99, 104); and, thus, the breaches of fiduciary duty "directly and proximately caused the waste and dissipation of Debtors' assets" and "resulted in millions of dollars of claims remaining unpaid" (A80 ¶ 116).

However, the Complaint acknowledges the Company's deteriorating financial condition and underfunded pension obligations that existed even prior to the Acquisition. (A66 ¶ 39; A73 ¶ 73) The Complaint also acknowledges that the industry in which the Company operated was in a state of ongoing decline. (A76-77 ¶ 91)

The Court finds no error in the Bankruptcy Court's conclusion that it could not reasonably infer from the factual allegations contained in the Complaint that Defendants' breach

of fiduciary duty in preparing and/or relying on the projections and consummating the Acquisition – as opposed to the ongoing industry decline or any other fact or circumstance of the Debtors' financial condition – was the proximate cause of the Company's insolvency. The breach of fiduciary duty claim was properly dismissed on this basis as well.

### 4. Dismissal with Prejudice

Plaintiff argues that even if dismissal of the breach of fiduciary duty claim was proper, the Bankruptcy Court erred in dismissing Count I with prejudice. Plaintiff argues that the United States Supreme Court has characterized dismissal with prejudice as a "harsh remedy" and has made clear that "outright refusal to grant [l]eave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." (D.I. 15 at 45 (quoting *New York v. Hill*, 528 U.S. 110, 118 (2000); *Foman v. Davis*, 371 U.S. 178, 182 (1962)) Plaintiff argues that the Bankruptcy Court did not explain its reasoning for dismissing Count I with prejudice. (*See id.* at 46-47)

Under the Federal Rules of Civil Procedure, a plaintiff is entitled to amend his complaint once; courts may grant subsequent amendments "when justice so requires." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003) (citing Fed. R. Civ. P. 15(a)). While leave to amend should be "freely given," the Bankruptcy Court had discretion to deny a request to amend (i.e., to dismiss with prejudice) "if it is apparent from the record that . . . amendment would be futile." *Id.*

It is clear from the record that, following comprehensive briefing and oral argument, the Bankruptcy Court concluded that permitting Plaintiff to amend Count I of the Complaint for a second time would be futile. (*See* A76, 86:12-13 ("I find no allegations that would support it. And I don't believe that there is a meaningful purpose to be served.")) That dismissal with prejudice was made on futility grounds is further confirmed in the Memorandum Order, which

21

was drafted for the purpose of "address[ing] the [Bankruptcy] Court's reasoning behind its dismissal of Count I with prejudice" (A305 n.2), and which explained that dismissal was granted because the Complaint alleged "no facts to plausibly establish entrenchment" (A309 ¶ 6); "no facts" to support an entrenchment theory (A309-10 ¶¶ 7-8); "no facts" to plausibly allege disloyal conduct (A310 ¶ 9); and "no facts" that would establish proximate cause (A311 ¶ 10).

Based on the record and proceedings in this case, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that the breach of fiduciary duty claim would not be salvaged by further amendment and, therefore, should be dismissed with prejudice. The Bankruptcy Court's oral and written rulings included a detailed treatment of the deficiencies in the factual allegations, and indicate that the Bankruptcy Court had "little reservation with respect to the breach of fiduciary duty counts," ultimately viewing this cause of action as illustrating "the reason why there is a business judgment rule." (A288-89, 81-82) The Bankruptcy Court's decision is supported by the facts that the Complaint had been amended once already (*see* Adv. D.I. 6);[12] that Plaintiff had access to documents and discovery (A214, 7; A284, 77);[13] that there had been comprehensive briefing and oral argument (A288, 81-82 ("I would conclude from my review . . . of the full briefing, as well as the argument I've received today, that I have little reservation with respect to breach of fiduciary duty counts."); and, as set forth herein, that the factual allegations in the Complaint were insufficient to state a claim under any

---

[12] The Court recognizes that the first amendment merely reflected that a settlement had been reached and deleted the allegations against former party Silver Point. (*See* D.I. 20 at 56) Although Plaintiff did not choose to make substantive amendments at this time, it was not precluded from doing so, and there was no abuse of discretion in the Bankruptcy Court viewing the situation before it as involving a request for a second amendment. In any event, even if the Court were to view the circumstances as involving Plaintiff's first substantive opportunity for amendment, there was no abuse of discretion in finding that amendment would be futile, for the reasons stated throughout this Opinion.

[13] *See* SA122-29 (disclosing time spent on review of information board relied on in analyzing Acquisition, including board meeting minutes/materials, projections, and advisory opinions).

of the theories posited (A309-11). The Court cannot say that the Bankruptcy Court abused its discretion in dismissing Count I with prejudice.

## C. Avoidance of Fraudulent Transfers (Counts II, III, & IV)

The Complaint sought to avoid and recover the bonuses paid to the Officer Defendants in connection with the Acquisition as constructive fraudulent transfers. Under § 548(a)(1)(B), any transfer or obligation incurred by a debtor for which it "received less than a reasonably equivalent value in exchange" may be avoided if any one of four conditions set forth in § 548(a)(1)(B)(ii)(I)-(IV) is met: (i) the debtor was or thereby became insolvent, (ii) the debtor was engaged in business or was about to engage in business for which any property remaining with the debtor was an unreasonably small capital, (iii) the debtor intended to incur or believed it would incur debts that would be beyond its ability to repay as they matured, or (iv) the debtor made the transfer or incurred the obligation to or for the benefit of an insider under an employment contract and not in the ordinary course of business. *See* 11 U.S.C. § 548(a)(1)(B). Section 544 of the Bankruptcy Code also permits a bankruptcy trustee to bring a claim for fraudulent transfer under applicable state laws, including the Ohio Uniform Fraudulent Transfer Act ("UFTA"), which is codified at Ohio Revised Code § 1336.01, *et seq. See* 11 U.S.C. § 544.

The Bankruptcy Court determined that the Complaint contained insufficient allegations to meet the statutory elements above and dismissed the claims without prejudice to re-plead them. Regarding reasonably equivalent value, the Bankruptcy Court observed that the bonuses did not "shock the Court" in the context of the overall transaction (*see* A291, 84) and the Complaint failed to otherwise articulate that the Company failed to obtain reasonably equivalent value in exchange for the bonuses (*see* A292, 85). The Bankruptcy Court further determined that the Complaint contained insufficient facts to plausibly allege that the Company was insolvent at the time of the Acquisition and bonuses or was rendered insolvent (*see* A292-93).

### 1. Insolvency

The Bankruptcy Code defines insolvency as the "financial condition such that the sum of [the] entity's debts is greater than all of [the] entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A). Similarly, under Ohio law, "a debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation." Ohio Rev. Code. § 1336.02(A)(1). In their motion to dismiss, Defendants argued that Plaintiff's allegations regarding insolvency were implausible based on, among other arguments, the fact that the Company's stock price jumped approximately 360% when the Acquisition was announced and continued to trade at pre-Acquisition levels for at least a year thereafter. (*See* A110)

The Memorandum Opinion did not address the fraudulent transfer counts, but in ruling from the bench, the Bankruptcy Court simply observed that it "struggle[d] to see, under these circumstances, as alleged, that the debtor was insolvent at the time of the transaction, or that it was rendered insolvent." (A292, 85) In so ruling, the Bankruptcy Court declined to attribute any significance to the stock price (A292, 85) – though it did observe that the stock price would be relevant to a solvency analysis, even though such evidence was "not appropriate for a Rule 12 motion." (*See* A292-93, 85-86 ("[W]hen courts look to see what people with skin in the game, with actual market-based information do, we can look to that as an indicator of value . . . . [T]he trading price of a security or a debt instrument is, indeed, meaningful evidence of value and relevant to the solvency analysis."))

On appeal, Plaintiff argues that the Complaint contained sufficient factual allegations to demonstrate that Debtors were insolvent at the time of, or became insolvent as a result of, the Acquisition and payment of the transaction bonuses, and that a strong stock price at the time of the Acquisition cannot rebut a claim of insolvency at the motion to dismiss stage. (*See* D.I. 15 at

24

49-50 (citing *In re W.R. Grace & Co.*, 446 B.R. 96, 106 & n.11 (Bankr. D. Del. 2011) (holding, in the context of plan confirmation, that while "market valuation is strong evidence" of solvency, lenders had not "backed up their contention that Debtors' market capitalization is conclusively one of solvency" and that "arguments for a presumption of solvency are not supported in the record or by operation of law."))

In particular, the Complaint alleges that the Debtors became insolvent as a result of the Acquisition and payment of the bonuses (A81 ¶ 122) and alleges the following facts in support: immediately following the Acquisition, the Debtors' liabilities exceeded the fair value of their assets (*see* A75 ¶ 84); at the time of the Acquisition, the pro forma combined company had approximately $261 million of funded debt obligations, $7 million of capital lease obligations, $235 million of unfunded pension liability, $3 million of deferred compensation obligations, and $4 million of reported environmental liabilities, for a combined total debt and non-operating liabilities of $511 million (*see id.* ¶ 85); and following the Acquisition, Debtors' total debt and non-operating liabilities of $511 million exceeded the midpoint fair value of their assets (based on a comparable companies analysis, comparable transactions analysis, discounted cash flow analysis including synergies, and net operating losses) by approximately $218 million (*see* A76 ¶ 86).

Defendants argue that these allegations are insufficient and insolvency is implausible based on the stock price. Defendants further argue that the Complaint implicitly concedes that the Company did not become insolvent until well after the closing of the Acquisition. (*See* D.I. 20 at 54 (citing Complaint at A78 ¶ 99 ("Within months after the closing date of the [Acquisition] it became apparent that the Debtors would breach covenants . . ."))) According to Defendants, if the Company was not insolvent at the time the bonuses were paid (immediately after the closing and in the first quarter of 2014), then the fraudulent transfer claim must fail.

(*See id.*) Defendants further assert that Plaintiff fails to point out that the valuation on which it relies was conducted by Silver Point, a defendant in this action that has since settled with Plaintiff. (*See id.* at 56) Defendants argue this "self-interested valuation by Silver Point" cannot trump contrary evidence, including the board's contemporaneous determination that the Acquisition was accretive; the advisory opinion[14] stating that the Company was solvent; and the contemporaneous reaction from investors. (*See id.*)

It is clear that any disagreement over the value of the Debtors' assets is one of fact and does not provide a basis for dismissal. The factual allegations in the Complaint, with all reasonable inferences drawn in favor of Plaintiff, were sufficient to plausibly allege that, at the time of the transfers, the Company's debts were greater than its assets at fair valuation under the relevant definitions of insolvency. Defendants' issues with the alleged asset value may be well-founded, but they do not provide a basis for dismissal at this stage of the proceedings.

### 2. Reasonably Equivalent Value

The Bankruptcy Code does not define "reasonably equivalent value." Courts "have rejected the application of any fixed mathematical formula to determine reasonable equivalence." *Fedders*, 405 B.R. at 546. The Third Circuit employs a "common sense" approach and has held that "a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave." *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (internal quotation marks omitted). In conducting the factual analysis of reasonably equivalent value, the court looks to the totality of the circumstances. *See Fruehauf*, 444 F.3d at 213.

Plaintiff argues that the Complaint contained sufficient allegations to plausibly state that Debtors did not receive reasonably equivalent value in exchange for the bonuses given the failure

---

[14] Contrary to Plaintiff's arguments, there is no indication that the Bankruptcy Court considered the advisory opinions in ruling on the motion to dismiss, and the Bankruptcy Court expressly declined to consider the stock prices. (*See* A292, 85)

of the Acquisition. (*See* D.I. 15 at 54-58) Conversely, Defendants argue there are no plausible allegations in the Complaint that Defendants did not actually earn the bonuses they were awarded. (*See* D.I. 20 at 52) Defendants argue that the first half of each bonus was paid upon closing of the Acquisition to compensate Defendants for their work over many years, including exploring numerous potential mergers and strategic transactions; and the second half of each bonus was performance-based, to be paid only after the combined company achieved certain financial benchmarks, which it did achieve. (*See id.*)

As Plaintiff points out, the Bankruptcy Court stated that the bonuses did not "shock the Court." (A291, 84) However, contrary to Plaintiff's contention, the record does not show that the Bankruptcy Court dismissed the claims based on a disagreement with the Complaint's factual allegations. (*See* D.I. 15 at 56) Rather, the Bankruptcy Court found no plausible allegations in the Complaint that the Officer Defendants did not earn the bonuses. The amount of the bonuses is not the issue, but whether the Company received reasonably equivalent value in exchange. It is undisputed that the bonuses were approved by the board's independent compensation committee and awarded to Defendants for their work in pursuing the Acquisition. (*See* SA71) Plaintiff's assertion that the Acquisition was ultimately unsuccessful in saving the Company does not detract from the work undertaken by Defendants for which they were compensated. Taking all the facts in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiff, the Complaint does not sufficiently allege that the Company failed to receive reasonably equivalent value for the bonuses it paid. The Court, therefore, affirms the Bankruptcy Court's dismissal of the fraudulent transfer counts.[15]

---

[15] Defendants also argue that the bonuses were payments for pre-existing debt, incurred on July 31, 2013 – one day before the Acquisition closed on August 1, 2013. (*See* D.I. 20 at 51) Because the Court concludes that the Complaint failed to plausibly allege that the Company did not receive reasonably equivalent value in exchange for the bonuses, the Court does not consider this additional argument.

## V. CONCLUSION

For the reasons explained above, the Court will affirm the Dismissal. A separate Order will be entered.

November 16, 2017
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE